[No. A102525. First Dist., Div. One. Aug. 22, 2003.]

ALEX FAGAN, JR., et al., Petitioners, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN
FRANCISCO, Respondent;
THE PEOPLE et al., Real Parties in Interest.

608

**COUNSEL**

James P. Collins for Petitioner Alex Fagan, Jr.

Freya A. Horne for Petitioner Matthew Tonsing.

Mark Nicco for Petitioner David Lee.

No appearance for Respondent.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Eric D. Share and Catherine A. McBrien, Deputy Attorneys General; Terence Hallinan, District Attorney, David Merin, Michon Martin and Laura Zunino, Assistant District Attorneys, for Real Party in Interest the People.

Steinhart & Falconer, Roger R. Myers and Rachel E. Matteo-Boehm for Real Parties in Interest Hearst Communications, Inc., Oakland Tribune, CBS Broadcasting, Inc., KGO Television, Inc., and KNTV Television, Inc.

## Opinion

**STEIN, J.**—By petition for writ of mandate, Alex Fagan, Jr., Matthew Tonsing and David Lee challenge an order of the San Francisco Superior Court denying their motion to maintain under seal the results of urinalysis tests. The urinalysis results are contained in petitioners' confidential peace officer personnel files (Pen. Code, § 832.8),[1] but were obtained by the San Francisco District Attorney pursuant to section 832.7, subdivision (a). Petitioners contend that the district attorney was not authorized to obtain the results and, even if the district attorney was so authorized, the information obtained may not be used or disclosed in criminal proceedings, or otherwise publicly disseminated, absent further judicial review. The superior court, on petitioner's motion, issued an interim protective order precluding public dissemination of the urinalysis results. After the superior court denied petitioners' motion, it dissolved its interim protective order. This petition followed. We stayed the superior court's order unsealing the urinalysis results, thereby reinstating that court's interim protective order.

■ We hold that although the district attorney properly obtained the results of petitioners' urinalysis tests under the provisions of section 832.7, subdivision (a), those results may not be publicly disclosed or disseminated absent compliance with Evidence Code section 1043 et seq., including a judicial determination of their admissibility (Evid. Code, § 350), relevancy (Evid. Code, § 1043, subd. (b)(3); *City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 74, 80, fn. 2 [260 Cal.Rptr. 520, 776 P.2d 222]), and the need for a protective order (Evid. Code, § 1045, subd. (d)).

### Background

In the early morning hours of November 20, 2002, petitioners, off-duty San Francisco police officers, were detained following a street fight. They were ordered to provide urine samples to the San Francisco Police Department's Management Control Division pursuant to Police Department General Order 2.02.[2] The urinalysis tests were conducted for purposes of the police internal affairs investigation and not as part of a criminal investigation. The results of the urinalysis tests were placed in petitioners' personnel files. Petitioners allege that in violation of the provisions of the Public Safety Officers Procedural Bill of Rights Act (Gov. Code, § 3303 et seq.), they were not afforded an opportunity to object before this information was placed in their personnel files. (Gov. Code, §§ 3305 & 3306.) A grand jury subsequently returned indictments against petitioners charging them with felony assault and battery (§§ 245, subd. (a)(1), 243, subd. (d)); however, the urinalysis results were not introduced into evidence in those proceedings.

---

[1] Further statutory references not otherwise noted are to this code.

[2] San Francisco Police Department General Order 2.02 provides that "[a] member, while off-duty and carrying a weapon, shall not consume alcoholic beverages to the extent that he/she becomes intoxicated."

Following disclosure that the district attorney had obtained the urinalysis results from petitioners' confidential peace officer personnel files, the superior court, on petitioners' motion, issued an interim protective order precluding public dissemination of those results. Thereafter, petitioners filed, under seal, their motion for a protective order, making the arguments raised here.[3] Petitioners also requested an order precluding the district attorney from releasing the urinalysis results on the grounds that those results were likely inadmissible and that release of them would prejudice their rights to a fair trial. The superior court rejected this argument on First Amendment grounds, and petitioners do not challenge that ruling here. The superior court granted motions to intervene by members of the media (hereafter media interveners)[4] who opposed petitioners' motion. The superior court denied petitioners' motion, and dissolved its interim protective order.

## MOOTNESS

After we issued our order to show cause, the district attorney dismissed the criminal indictments and filed new criminal complaints against petitioners. The urinalysis results remain under seal in accordance with the superior court's interim protective order and our stay order. If we discharged our order to show cause, dissolved our stay, and denied the petition as moot without determining its merits, the district attorney might publicly disseminate the information he obtained from petitioners' confidential peace officer personnel files. We anticipate that the petitioners would seek a new protective order from the superior court, which would then face the same questions of law presented by this petition. ■ Since this is an action involving a matter of continuing public interest, and the issue is likely to recur, we will exercise our inherent discretion to resolve the issue now, even though dismissal of the indictment during the pendency of these proceedings would normally have rendered the matter moot. (See *Baluyut v. Superior Court* (1996) 12 Cal.4th 826, 829, fn. 4 [50 Cal.Rptr.2d 101, 911 P.2d 1].)[5]

Having issued our order to show cause and having afforded the parties an opportunity for oral argument, we now decide the merits of the petition. (See

---

[3] When the motions were presented in this court in support of the petition (Cal. Rules of Court, rule 56(d)), we gave notice to all parties of our intention to unseal them. (Cal. Rules of Court, rule 12.5(f)(2).) No opposition was filed, and we unsealed the motions. The urinalysis results themselves were not included in any filing in the superior court.

[4] The media interveners are Hearst Communications, Inc., doing business as San Francisco Chronicle; Oakland Tribune; CBS Broadcasting, Inc.; KGO Television, Inc.; and KNTV Television, Inc.

[5] Where, as here, a question of public access to information in a criminal proceeding is concerned, "resolution of the case at this juncture is appropriate." (*NBC Subsidiary (KNBC-TV), Inc. v. Superior Court* (1999) 20 Cal.4th 1178, 1190, fn. 6 [86 Cal.Rptr.2d 778, 980 P.2d 337].)

Cal. Const., art. VI, § 14; *Kowis v. Howard* (1992) 3 Cal.4th 888 [12 Cal.Rptr.2d 728, 838 P.2d 250].)

## Discussion

### 1. *Standard of Review*

Ordinarily, " '[a] trial court's decision concerning the discoverability of material in police personnel files is reviewable under an abuse of discretion standard.' " (*People v. Mooc* (2001) 26 Cal.4th 1216, 1228 [114 Cal.Rptr.2d 482, 36 P.3d 21].) Here, however, we are called upon to review the superior court's determination of a question of law: the scope of a district attorney's authority to review and disclose information contained in a confidential peace officer personnel file under section 832.7, subdivision (a). ██ Our review of the construction and interpretation of the controlling statutes is de novo. (See *County of Los Angeles v. Superior Court* (1993) 18 Cal.App.4th 588, 594 [22 Cal.Rptr.2d 409].)

### 2. *The Parties' Contentions*

The People contend that the district attorney properly obtained the urinalysis results from petitioners' confidential personnel files, and that those results are no longer confidential. They argue that the urinalysis results are evidence in the criminal case and subject to public disclosure as would blood-alcohol evidence in any other criminal prosecution. Media interveners agree, arguing that the protections afforded police officers concerning the confidentiality of their personnel files do not apply when those officers are defendants in a criminal case. In addition, media interveners argue that the sealing of personnel information referenced in pleadings or court hearings is inconsistent with the First Amendment.

Petitioners contend that the district attorney wrongfully gained access to their confidential peace officer personnel files because the crimes with which they are charged occurred while they were off duty. Alternatively, they contend that even if the district attorney properly accessed their files under section 832.7, the information obtained remains confidential unless and until there has been a judicial review of its relevancy and admissibility to the prosecution's case.

### 3. *The Statutory Scheme*

Before we address the precise issues presented here—(1) whether a district attorney may have access to information in confidential peace officer personnel files to investigate conduct of off-duty officers, and if so, (2) whether he

nonetheless must comply with Evidence Code section 1043 et seq., or obtain other judicial review, prior to disclosing the information to the public or in a criminal action—we will review the statutes governing peace officer personnel files.

Section 832.7 generally makes "peace officer or custodial officer" personnel records confidential, allowing disclosure of them in criminal and civil proceedings only upon compliance with the provisions of Evidence Code sections 1043 or 1046.[6] "Personnel records" are files maintained by the employing agency under the officer's name, and containing records relating to personal data, medical history, and employee benefit elections, "(d) [e]mployee advancement, appraisal, or discipline. [¶] (e) Complaints, or investigations of complaints, concerning an event or transaction in which he or she participated, or which he or she perceived, and pertaining to the manner in which he or she performed his or her duties. [¶] (f) Any other information the disclosure of which would constitute an unwarranted invasion of personal privacy." (§ 832.8.)

Sections 832.7 and 832.8, along with Evidence Code sections 1043 and 1045, were enacted in 1978 to codify procedures for the discovery of peace officer personnel files. (*Alford v. Superior Court* (2003) 29 Cal.4th 1033, 1037–1038 [130 Cal.Rptr.2d 672, 63 P.3d 228].)[7] "A party seeking disclosure must file a written motion …. The motion must describe the type of records or information sought and provide affidavits showing good cause for the disclosure, setting forth its materiality to the pending litigation and stating on reasonable belief that the identified agency possesses the records or information …. The trial court must then make an in camera examination of the information produced by the agency and exclude from disclosure certain categories of information …." (*City of San Jose v. Superor Court, supra,* 5 Cal.4th at p. 52.) The party seeking disclosure must give notice of the motion to the custodian of the records, who in turn must immediately notify the officer whose records are sought. (Evid. Code, § 1043, subd. (a).) "The statutory scheme carefully balances two directly conflicting interests: the

---

[6] Section 832.7, subdivision (a) provides that "[p]eace officer personnel records … or information obtained from these records, are confidential and shall not be disclosed in any criminal or civil proceeding except by discovery pursuant to Sections 1043 and 1046 of the Evidence Code. This section shall not apply to investigations or proceedings concerning the conduct of police officers or a police agency conducted by a grand jury, a district attorney's office, or the Attorney General's office."

[7] Previously, motions for such discovery were governed by the California Supreme Court's decision in *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 [113 Cal.Rptr. 897, 522 P.2d 305], holding "that a criminal defendant's fundamental right to a fair trial and an intelligent defense in light of all relevant and reasonably accessible information entitled a defendant, who was asserting self-defense to a charge of battery on a police officer, to discovery of police personnel records." (*City of San Jose v. Superior Court* (1993) 5 Cal.4th 47, 52 [19 Cal.Rptr.2d 73, 850 P.2d 621].)

peace officer's just claim to confidentiality, and the criminal defendant's equally compelling interest in all information pertaining to the defense." (*City of San Jose v. Superior Court, supra,* 5 Cal.4th at p. 53, [19 Cal.Rptr.2d 73, 850 P.2d 621].) The custodian of the file, or the officer whose records are at issue, may request a court order "to protect the officer or agency from unnecessary annoyance, embarrassment or oppression." (Evid. Code, § 1045, subd. (d).)

The protections afforded by the statutory scheme, however, are not limited to the circumstance of a criminal defendant seeking discovery of a police witness's file. For example, a prosecutor must comply with Evidence Code section 1043 to obtain discovery of a former police officer's personnel file when prosecuting that person for a crime committed postretirement. (*People v. Superior Court (Gremminger)* (1997) 58 Cal.App.4th 397 [67 Cal.Rptr.2d 910] (hereafter *Gremminger*).) And discovery of information from confidential peace officer personnel files obtained by a defendant in a criminal action may not be provided to the prosecutor absent a separate motion and hearing, nor may it be used outside the proceeding in which discovery was ordered. (*Alford v. Superior Court, supra,* 29 Cal.4th at pp. 1045–1046.)

"The term 'confidential' in Penal Code section 832.7 has independent significance and 'imposes confidentiality upon peace officer personnel records and records of investigations of citizens' complaints, with strict procedures for appropriate disclosure in civil and criminal cases ....' " (*Rosales v. City of Los Angeles* (2000) 82 Cal.App.4th 419, 426 [98 Cal.Rptr.2d 144], quoting *City of Richmond v. Superior Court* (1995) 32 Cal.App.4th 1430, 1440 [38 Cal.Rptr.2d 632].) "Given the status of confidentiality conferred by the Legislature on police personnel records, the officer's right to be notified that his or her records are sought (Evid. Code, § 1043, subd. (a)), and his or her right to seek a protective order from 'unnecessary annoyance, embarrassment or oppression' (Evid. Code, § 1045, subd. (d)), courts have concluded that an officer has limited or conditional privilege in such records. [Citations.] The privilege is conditional or limited because an officer cannot prevent disclosure of his or her personnel records or information contained in those records simply because he or she does not desire disclosure." (*Rosales v. City of Los Angeles, supra,* 82 Cal.App.4th at pp. 426–427.) ▓ These are the only protections available to these officers because a violation of section 832.7 does not give rise to a private cause of action for damages. (*Rosales v. City of Los Angeles, supra,* at pp. 427–428; *City of Hemet v. Superior Court* (1995) 37 Cal.App.4th 1411, 1430 [44 Cal.Rptr.2d 532]; *Bradshaw v. City of Los Angeles* (1990) 221 Cal.App.3d 908, 918–919 [270 Cal.Rptr. 711].) Thus, an officer whose records are wrongfully disclosed may not state causes of action for invasion of privacy, negligence, negligence per se, violation of a federal right to privacy or infliction of emotional distress. (*Rosales v. City of Los Angeles, supra,* at pp. 429–432.)

### 4. *Access to Petitioners' Personnel Files*

The urinalysis tests petitioners were subjected to were conducted as part of an administrative investigation (Gov. Code, § 3303), and the results of those tests were placed in their confidential peace officer personnel files. (§§ 832.7, subd. (a), 832.8.) Petitioners were not under arrest when the urinalysis tests were administered, and the tests were not administered pursuant to driving under the influence statutes or implied consent laws. (Veh. Code, §§ 23136, 23152.) Nor are they evidence obtained by a search, with or without a warrant, as part of a criminal investigation. (*Schmerber v. California* (1966) 384 U.S. 757 [16 L.Ed.2d 908, 86 S.Ct. 1826].) ▇ Because petitioners' urinalysis test results are contained in police investigative files, and the files of the district attorney, they are not subject to disclosure under the California Public Records Act. (Gov. Code, § 6254, subd. (f).) Since these test results have not been disclosed in any court filing, and were not presented as evidence to the grand jury, the arguments of the People and media interveners concerning public disclosure of the blood-alcohol results of members of the public arrested for driving under the influence are inapposite, and the arguments of media interveners concerning public access to court hearings and court records are premature.

The confidentiality provision of section 832.7, subdivision (a) contains a limited exception: "This section shall not apply to investigations or proceedings concerning the conduct of police officers or a police agency conducted by a grand jury, a district attorney's office, or the Attorney General's Office." Relying on *Gremminger, supra,* 58 Cal.4th 397, petitioners initially contend that this exception is inapplicable to them because the conduct with which they are charged occurred while they were off duty. In *Gremminger,* the defendant was charged with a murder committed while he was employed in a non-peace-officer capacity. (*Id.* at p. 400.) The court held that "[t]he exemption provided in section 832.7 applies to investigations of police officer conduct. The key is whether the police officer was employed as a police officer at the time of the conduct, which is being investigated. If so, then the exemption applies, whether or not the police officer is currently employed as a police officer at the time of the investigation ..." (*Id.* at p. 406.) It is undisputed that petitioners were employed as police officers at the time of the incident in question. Indeed, petitioners were required to undergo urinalysis testing precisely because they were so employed. Although they were off duty, petitioners were nonetheless police officers and under a duty to protect the public. (§§ 830.1 & 830.2; *People v. Derby* (1960) 177 Cal.App.2d 626 [2 Cal.Rptr. 401].)[8]

---

[8] We note, however, that our Supreme Court has held that for some purposes, off-duty officers have been determined not to be engaged in the performance of their duties. (*People v.*

*Gremminger*, does, however, resolve media interveners' argument that the protections of section 832.7 are inapplicable to police officers charged as criminal defendants. Although Gremminger was a retired police officer, the court found that the protections afforded by section 832.7 are triggered by whether information is contained in a confidential peace officer personnel file, not by the witness or defendant status of the subject of the file. (§ 832.7, subds. (a) & (f); Evid. Code, §§ 1043, subd. (a), 1045, subd. (d).) Thus, the prosecutor was precluded from access to Gremminger's peace officer personnel records, absent compliance with Evidence Code section 1043. (*Gremminger, supra*, 58 Cal.4th at p. 407.)

*People v. Gwillim* (1990) 223 Cal.App.3d 1254 [274 Cal.Rptr. 415], relied upon by media interveners, is not to the contrary. In *Gwillim* a police officer was charged with crimes committed against another officer while the two were on duty. (*Id.* at p. 1259.) During a police department internal investigation of the incident, Gwillim gave an immunized statement. (*See Lybarger v. City of Los Angeles* (1985) 40 Cal.3d 822 [221 Cal.Rptr. 529, 710 P.2d 329] (*Lybarger*).)[9] He was told that his statement would be "held confidential consistent with … section 832.7." (*Gwillim, supra*, 223 Cal.App.3d at pp. 1269–1270.) The district attorney received the statement under the authority of section 832.7, and revealed information about it to the victim. The appellate court affirmed the district attorney's right to receive the statement (*Gwillim*, at pp.1269–1270), but held, consistent with *Lybarger*, that the prosecution must "develop, prepare, and present the criminal case without reference to defendant's immunized statement." (*Id.* at p. 1273.) The precise issue we address today was not before the court.

### 5. Disclosure of Information Obtained from Police Personnel Files

Alternatively, petitioners argue that even if the district attorney had legitimate access to their confidential personnel files for purposes of conducting an investigation concerning their conduct or that of the police department, the material obtained from their files remains confidential, absent compliance with the provisions of Evidence Code sections 1043 and 1045, or other judicial review.

---

*Corey* (1978) 21 Cal.3d 738 [147 Cal.Rptr. 639, 581 P.2d 644]; *Cervantez v. J. C. Penney Co.* (1979) 24 Cal.3d 579 [156 Cal.Rptr. 198, 595 P.2d 975].)

[9] In *Lybarger,* the California Supreme Court harmonized certain provisions of the Public Safety Officers' Procedural Bill of Rights Act, reconciling them by employing use and derivative use immunity. The high court held that an officer must be told "that although he had the right to remain silent and not incriminate himself, (1) his silence could be deemed insubordination, leading to administrative discipline, and (2) any statement made under the compulsion of the threat of such discipline could not be used against him in any subsequent criminal proceeding." (*Lybarger, supra*, 40 Cal.3d at p. 829.)

"Our role in construing a statute is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. [Citation.] Because the statutory language is generally the most reliable indicator of that intent, we look first at the words themselves, giving them their usual and ordinary meaning. [Citation.] We do not, however, consider the statutory language in isolation, but rather examine the entire substance of the statute in order to determine the scope and purpose of the provision, construing its words in context and harmonizing its various parts." (*Alford v. Superior Court, supra*, 29 Cal.4th at p. 1040.) It is well settled that " ' "language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend." ' " (*People v. Ledesma* (1997) 16 Cal.4th 90, 95 [65 Cal.Rptr.2d 610, 939 P.2d 1310].)

The People contend that the exception in section 832.7, subdivision (a) applies to both its confidentiality provision and its limitation on disclosure so that when the district attorney investigates or prosecutes police officer or police agency misconduct, he not only has unfettered access to confidential police personnel files, but there are no constraints on his use or disclosure of any information obtained from those files. The People's interpretation of section 832.7, subdivision (a) leads to the absurd consequence that the protections specified in that section are completely lost for all information in any peace officer's personnel file (§ 832.8) perused by the district attorney in the course of an investigation, regardless of whether that information is ultimately admissible or relevant to a subsequent criminal or civil action. Moreover, this loss of confidentiality would occur with no notice to the officers involved, and they would have no recourse. (*Rosales v. City of Los Angeles, supra*, 82 Cal.App.4th at pp. 429–432.) The People's interpretation of the section would also conflict with the provisions of the California Public Records Act concerning disclosure of investigative or personnel files. (Gov. Code, § 6254, subds. (c) & (f).)

In a well-reasoned opinion, the Attorney General was asked to consider "what restrictions are placed upon a district attorney in obtaining access to the personnel records of a police officer." (66 Ops.Cal.Atty.Gen. 128 (1983).) The Attorney General concluded that "as long as the district attorney is duly investigating 'the conduct of police officers or a police agency' as specified in section 832.7, he need not first obtain a court order for access to the records in question." (66 Ops.Cal.Atty.Gen., *supra*, at p. 128.) The Attorney General noted that "the Legislature and the courts have generally allowed public access to government files relating to the conduct of official business but not to those files relating to the personal lives of individuals. [Citations.] The latter have been treated as 'confidential' so as to protect the right of privacy." (66 Ops.Cal.Atty. Gen., *supra*, at p. 129.) "Confidential information," the Attorney General observed, is "not publicly disseminated." (66 Ops.Cal.Atty.Gen., *supra*, at p. 129, fn. 3.) And, such exempt records do not

lose their nonpublic status if they are disclosed to the district attorney. (Gov. Code, § 6265.) The Attorney General concluded that "[a] district attorney, however, would not be authorized under section 832.7 to release the information to the public; the exception language in the statute is limited to the district attorney's office for the purposes stated." (66 Ops.Cal.Atty.Gen., *supra*, at p. 130.)

The Legislature amended section 832.7 in 1988 (Stats. 1988, ch. 685, § 2) to, among other things, exempt from the prohibition against disclosure investigations or proceedings conducted by the Attorney General's Office. (Legis. Counsel's Dig., Sen. Bill No. 685 (1987-1988 Reg. Sess.) Stats. 1988, Summary Dig., p. 203.) We note that, notwithstanding the Attorney General's 1983 opinion, the Legislature made no change to the language of that section concerning confidentiality of these records.[10]

■ The exception contained in section 832.7 affords the district attorney the ability to review confidential peace officer personnel files when investigating police misconduct without notice to the individuals involved. At the same time, it requires the district attorney to maintain the nonpublic nature of the files absent judicial review of the relevance of the information to a criminal or civil action. Where the exception afforded the district attorney by section 832.7, subdivision (a) is inapplicable, he must proceed according to the provisions of Evidence Code section 1043. (*Gremminger, supra*, 58 Cal.App.4th 397.)

Our interpretation of this section is consistent with our Supreme Court's recent conclusion that access to confidential peace officer personnel files for one purpose by a party does not allow disclosure of the information to other parties or in other proceedings. (*Alford v. Superior Court, supra*, 29 Cal.4th at pp. 1045–1046.)

### CONCLUSION

We therefore conclude that the district attorney properly gained access to petitioners' confidential peace officer personnel files under section 832.7,

---

[10] " 'Opinions of the Attorney General, while not binding, are entitled to great weight .∴. In the absence of controlling authority, these opinions are persuasive "since the Legislature is presumed to be cognizant of that construction of the statute," ' " and that " 'if it were a misstatement of the legislative intent, "some corrective measure would have been adopted." ' " (California Assn. of Psychology Providers v. Rank (1990) 51 Cal.3d 1, 17 [270 Cal.Rptr. 796, 793 P.2d 2], citations omitted; *County of San Diego v. State of California* (1997) 15 Cal.4th 68, 103–104 [61 Cal.Rptr.2d 134, 931 P.2d 312].)

subdivision (a); however, the information obtained from those files remains confidential absent judicial review pursuant to Evidence Code section 1043 et seq.[11]

DISPOSITION

Let a peremptory writ of mandate issue, commanding respondent, County of San Francisco Superior Court in *People v. Alex Fagan, Jr., et al.* (Nos. 2096549, 188728-01, 2096547, 188728-03, 2096548, 188728-02) to maintain its interim protective order in effect. The results of petitioners' urinalysis tests, contained in their confidential peace officer personnel files, shall remain sealed absent further proceedings consistent with this decision.

Marchiano, P. J., and Margulies, J., concurred.

---

[11] Nothing in our analysis prevents a prosecutor from presenting information obtained from confidential peace officer personnel files as evidence before a grand jury investigating police officer misconduct. The grand jury is itself afforded the limited exception to confidentiality provisions of section 832.7, subdivision (a). The grand jury proceedings are closed proceedings. (§ 914 et seq.; 79 Ops.Cal.Atty.Gen. 185 (1996).) Grand jury transcripts remain sealed in criminal cases until 10 days after the filing of an indictment, and are subject to further sealing by the superior court in whole or in part. (§ 938.1, subd. (b).)