Filed 2/16/22  P. v. Williams CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ALEX WILLIAMS,<br><br>    Defendant and Appellant. | F081027<br><br>(Super. Ct. No. DF014186A)<br><br>**OPINION** |

-ooOoo-

**THE COURT**\*

APPEAL from a judgment of the Superior Court of Kern County.  John S. Somers, Judge.

Ross Thomas, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Brook A. Bennigson, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*        Before Detjen, Acting P. J., Peña, J. and Meehan, J.

Defendant Alex Williams contends on appeal that (1) the trial court abused its discretion in denying his *Romero*[1] motion to dismiss a prior felony "strike" conviction within the meaning of the "Three Strikes" law (Pen. Code, §§ 667, subds. (c)–(j), 1170.12, subds. (a)–(e));[2] and (2) requests this court independently review the record of the in camera hearing of defendant's *Pitchess*[3] motion.  We affirm.

## PROCEDURAL SUMMARY

On October 29, 2019, the Kern County District Attorney filed an information charging defendant with two counts of resisting an executive officer by means of threat or violence (§ 69; counts 1 & 2) and concealing or destroying evidence (§ 135; count 3). The information further alleged that defendant had suffered two prior strike convictions (§§ 667, subds. (c)–(j), 1170.12, subds. (a)–(e)) and had served one prior prison term (§ 667.5, subd. (b)).

On February 27, 2020, a jury returned a verdict:  on count 1, it found defendant guilty; on count 2, it found defendant not guilty of resisting an executive officer, but guilty of the lesser offense of resisting a peace officer, in violation of section 148, subdivision (a); and on count 3, it found defendant not guilty.  On the same date, in a bifurcated proceeding outside the presence of the jury, the trial court found true the second prior strike conviction allegation for oral copulation by fear or force (former § 288a, subd. (c), renumbered as § 287, subd. (c), by Stats. 2018, ch. 423, § 49).  It found not true the first prior strike conviction allegation for oral copulation by intoxicating substance (former § 288a, subd. (i), renumbered as § 287, subd. (i)) and dismissed the prior prison term allegation on the prosecutor's motion.

---

[1] *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*).

[2] All statutory references are to the Penal Code unless otherwise noted.

[3] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*).

2.

On March 26, 2020, defendant was sentenced to state prison for four years. On count 1, the midterm sentence of two years was imposed and then doubled in accordance with section 667, subdivision (e)(1), and section 1170.12, subdivision (c)(1). A one-year jail term was imposed on count 2 and ordered to run concurrent to the sentence on count 1.

On April 6, 2020, defendant filed a notice of appeal.

## FACTS

*Prosecution Case*

On June 6, 2018, defendant was an inmate at the California Correctional Institution, Tehachapi. Officer Ryan Avila worked there as a uniformed correctional officer. Avila began to search defendant for a suspected object without incident. However, when Avila reached the front of defendant's left sock, he felt an object which he believed, based on prior experience, may have been the handle to an inmate-manufactured weapon.

As Avila felt this object, defendant broke free from his grasp and started turning to his right. Avila attempted to pull defendant down, but defendant elbowed him in the face and both men fell to the ground. Defendant started kicking and hitting Avila in the face with an open hand strike. Avila ordered defendant to stop resisting and tried to regain physical control, punching defendant in the face, but defendant did not comply and continued to resist and strike Avila, while reaching towards his left sock.

Another correctional officer, Alicia Wiley, responded and struck defendant three times with her baton and ordered him to stop resisting. Defendant kicked Wiley in the leg and all three were pepper sprayed. Defendant broke free, ran outside where he "proned out" and was detained. A search was conducted of the area where defendant "proned out," but nothing was found.

On August 31, 2018, correctional lieutenant Constance Wadle conducted a hearing regarding the incident. Defendant stated at the hearing, " 'I did not hit that cop. I only

3.

resisted.' " Avila stated that he did not repeatedly punch defendant in the back of his head and that defendant did not curl up into the fetal position during the incident, and that he had pain on his upper lip and "pressure on my left eye" from where defendant elbowed him in the face and hit him with an open hand strike.

### *Defense Case*

Defendant testified at trial that, as he was being searched, Avila pulled him backwards by his dreadlocks, causing him to lose his footing and fall to the ground, and that he did not intentionally strike Avila as he fell, nor intentionally kick Wiley when she responded, or resist or hear anyone order him to stop. He said that he got up and ran while he was being struck and pepper sprayed because he was afraid the officers would hurt him and wanted to get to a location where he was more visible. He testified that he never had a weapon on him. Defendant denied making the statement attributed to him by Wadle.

## DISCUSSION

### I. *Romero* **Motion**

Defendant contends the trial court abused its discretion when it denied his *Romero* motion to dismiss his prior strike conviction. The People disagree. We agree with the People.

### A. *Background*

On March 26, 2020, defendant invited the court by written motion to strike his 2002 forcible oral copulation conviction pursuant to section 1385 and *Romero*, *supra*, 13 Cal.4th 497.

Defendant's motion requested the trial court exercise its discretion to dismiss his prior strike conviction. He argued that he fell outside the spirit of the Three Strikes Law because (1) his strike conviction was remote in time; (2) his current offense was not serious or violent; (3) a major contributing factor to his current conviction was the lack of experience on the part of the officer; and (4) the punishment under the Three Strikes Law is disproportionate to the severity of the current offense. At the hearing on defendant's

4.

motion, defense counsel reiterated the points set forth in defendant's written motion. She argued that defendant's strike offense was remote in that it was 18 years old and that defendant committed it when he was 20 years old. She noted that the strike related to sexually based conduct and pointed out that defendant had no convictions based on unlawful sexual conduct since that offense. Finally, she argued that the crime at issue here was, in her opinion, a misdemeanor.

The prosecutor argued that the trial court should deny defendant's motion because defendant was convicted of felonious conduct that posed a risk of serious injury. He further pointed out that defendant had been in custody or on parole since he committed his strike offense, which showed that he did not fall outside the spirit of the Three Strikes Law even though his offense was 18 years old.

The trial court considered the probation report, which stated that defendant was previously convicted of oral copulation of an intoxicated person (former § 288a, subd. (i)) and unlawful oral copulation (former § 288a, subd. (c)(2)) and on October 17, 2002, he was sentenced to 12 years in prison. While on parole for that offense, he was convicted of being a felon in possession of a firearm (§ 29800, subd. (a)(1)) on December 13, 2013, for which he was sentenced to seven years in prison. While serving that sentence, he committed the offenses at issue here.

The trial court then denied defendant's *Romero* motion, concluding that (1) the strike conviction was not remote in time when considering that defendant had spent most of the intervening period of time in custody, (2) the conduct underlying that prior strike conviction was "extremely serious," and (3) the circumstances of the present offense— while "not the most serious … [s]ection 69 [offense]" the court had ever seen—was still a serious offense and a threat to institutional security. In the context of selection of the lower, middle, or upper term, the trial court further noted that defendant had previously served a prison term and his performance on parole had been unsatisfactory. On the other hand, it also noted that defendant striking Avila "was not an intentional action in this case." The trial court then imposed the sentence, doubling the middle term based on the prior strike conviction.

### B. Law

The intent of the Three Strikes Law is " 'to ensure longer prison sentences and greater punishment for those who commit a felony and have been previously convicted of serious and/or violent felony offenses.' " (*People v. Strong* (2001) 87 Cal.App.4th 328, 337.)  The Three Strikes Law establishes a sentencing norm for longer sentences for repeat offenders and "carefully circumscribes the trial court's power to depart from this norm," requiring the trial court to explicitly justify its decision to depart from this norm. (*People v. Carmony* (2004) 33 Cal.4th 367, 378 (*Carmony*).)  "In doing so, the law creates a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper."  (*Ibid.*)

However, under the Three Strikes sentencing scheme the trial court retains jurisdiction to dismiss or strike one or more of a defendant's prior strike convictions, "subject, however, to strict compliance with the provisions of section 1385 and to review for abuse of discretion."  (*Romero*, *supra*, 13 Cal.4th 497 at p. 504.)

Section 1385 grants trial courts limited discretion to strike prior strike conviction allegations.  (§ 1385; *Romero*, *supra*, 13 Cal.4th at p. 530.)  The lower court must determine whether "in light of the nature and circumstances of [the defendant's] present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies."  (*People v. Williams* (1998) 17 Cal.4th 148, 161; see *People v. Strong*, *supra*, 87 Cal.App.4th at p. 336 [The "spirit" of a law refers to the general meaning or purpose of the law].)

Discretion is abused if a court dismisses a prior strike conviction for judicial convenience, to relieve court congestion, or simply because the defendant pled guilty. (*Romero*, *supra*, 13 Cal.4th 497 at p. 531.)  "[A] [trial] court [would not] act properly if 'guided solely by a personal antipathy for the effect that the three strikes law would have on [a] defendant ….' "  (*Ibid.*)  Additionally, considering the defendant's criminal history alone is " 'incompatible with the very nature of sentencing discretion.' "  (*In re Saldana*

6.

(1997) 57 Cal.App.4th 620, 626; *People v. Superior Court* (*Alvarez*) (1997) 14 Cal.4th 968, 981.)

However, the extent of a defendant's criminal record is " 'undeniably relevant' " to the factors outlined in *Williams*, and the defendant's sentence is the overarching consideration when deciding to strike a prior conviction allegation "because the underlying purpose of striking prior conviction allegations is the avoidance of unjust sentences." (*People v. Garcia* (1999) 20 Cal.4th 490, 500–501.)  The sentence imposed by the trial court is, also, itself, a factor when deciding a defendant's prospects for committing future crimes because the defendant will have fewer opportunities to commit crimes while incarcerated.  (*People v. Gaston* (1999) 74 Cal.App.4th 310, 315.)

Accordingly,

> " '[W]here the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance' [Citation.]  Because the circumstances must be 'extraordinary … by which a career criminal can be deemed to fall outside the spirit of the very scheme within which he squarely falls once he commits a strike as part of a long and continuous criminal record, the continuation of which the law was meant to attack' [citation], the circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme must be even more extraordinary." (*Carmony*, *supra*, 33 Cal.4th at p. 378.)

On review, the trial court's denial of the motion is strongly presumed to be a proper exercise of discretion.  (*Carmony*, *supra*, 33 Cal.4th at p. 378.)  It is the defendant's burden to provide the trial court with evidence to support his *Romero* motion. (*People v. Lee* (2008) 161 Cal.App.4th 124, 129.)  "[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Carmony*, at p. 377.)

7.

## C.    Analysis

Here, the trial court explicitly considered the seriousness of defendant's prior strike, his history of reoffending and the circumstances and seriousness of the current offense.  It explained that, although defendant committed the prior strike almost 20 years ago, he had reoffended both in and out of custody since then.  The trial court's discussion of the proper considerations, along with the presumption that denial of a *Romero* motion is a proper exercise of discretion (*Carmony*, *supra*, 33 Cal.4th at p. 378), convinces us that the trial court's denial of defendant's motion was not an abuse of discretion.  The trial court's decision was not "so irrational or arbitrary that no reasonable person could agree with it." (*Id*. at p. 377.)  As we explain below, defendant's arguments to the contrary do not persuade us.

Defendant first argues that the trial court failed to consider that defendant has what he contends is a limited criminal record.  However, "[i]n determining whether a prior conviction is remote, the trial court should not simply consult the Gregorian calendar with blinders on." (*People v. Humphrey* (1997) 58 Cal.App.4th 809, 813; see *People v. Solis* (2015) 232 Cal.App.4th 1108, 1124 [a prior strike conviction is not properly stricken merely because it is 30 years old].)  "To be sure, a prior conviction may be stricken if it is remote in time.  In criminal law parlance, this is sometimes referred to as 'washing out.' [Citations.]  The phrase is apt because it carries the connotation of a crime-free cleansing period of rehabilitation after a defendant has had the opportunity to reflect upon the error of his or her ways." (*Humphrey*, at p. 813.)  Here, defendant did not live a legally blameless life after his prior strike conviction.  Although defendant's first conviction, the strike at issue here, occurred almost 20 years ago, defendant reoffended when he was on parole for that violation.  He then committed the current offenses while still in custody for the second offense.  As the trial court stated, defendant has been "incarcerated for largely his entire adult life," and "[g]iven the fact that he has been incarcerated for nearly all of the 19 years since [his first] conviction, I cannot find remoteness to be a factor that weighs that strongly in this case in favor of striking the

8.

serious felony prior." Thus, defendant's prior strike conviction was not so remote that he fell outside the spirit of Three Strikes law.

Defendant also contends the trial court should have taken into account that he is "[i]n no way … dismissive of his current conviction," when ruling on his *Romero* motion. However, according to the probation report the trial court considered in ruling on the *Romero* motion, defendant denied all culpability for the instant offense. The trial court considered defendant's argument that striking Avila was inadvertent, but concluded it did not weigh heavily enough in favor of striking the prior strike in light of other considerations.

Defendant next argues the denial of his *Romero* motion was an abuse of discretion because the nature of his current offense was minor and could have been punished as a misdemeanor. However, the trial court stated, "It is a very serious [section 69 offense], and the circumstances of this [current] offense … are a threat to institutional security[.] …  I just don't feel either the seriousness of the current offense or the circumstances of the prior one warrant granting a *Romero* motion .…" This is also reflected in the trial court's sentencing of defendant to the middle term for the offense.

The trial court did not abuse its discretion in denying defendant's *Romero* motion to dismiss his previous strike. Defendant has not presented affirmative evidence that the trial court failed to look at "the entire picture" when it denied defendant's *Romero* motion. (See *People v. Superior Court* (*Alvarez*), *supra*, 14 Cal.4th at p. 981.)

## II. REVIEW OF *PITCHESS* MATERIALS

Defendant requests this court independently review the record of the in camera hearing on defendant's *Pitchess* motion. Defendant further requests that this court review the sealed materials to determine what documents were produced or not produced for the trial court's review and the sufficiency of any explanation of such production. The People do not object but argue that defendant has not met his burden of demonstrating there was a reasonable probability of a different outcome had the trial court conducted the *Pitchess* hearing differently. We have reviewed the record of the in camera hearing and the sealed materials from defendant's *Pitchess* hearing, and find the explanation for such

production to be sufficient, and do not find a reasonable probability of a different outcome.

### A. Background

On November 8, 2019, defendant filed a motion for an order to produce documents for inspection and a motion for pretrial discovery of law enforcement personnel records for Avila and Wiley concerning any accusations that they had a history of lack of credibility, prior wrongful acts involving moral turpitude, dishonesty, untruthfulness, false arrest, conduct unbecoming an officer, neglect of duty, or excessive force, pursuant to *Pitchess*, *supra*, 11 Cal.3d 531.  (See Evid. Code, § 1043 et seq.; see also §§ 832.5, 832.7, subd. (a).)  The Department of Corrections and Rehabilitation filed an opposition.

On December 11, 2019, the trial court conducted an in camera *Pitchess* hearing to review the officers' files.  The hearing was recorded, transcribed, and filed under seal.  At the in camera hearing, outside the presence of the parties, the custodians of records for Avila and Wiley testified under oath about the categories of documents they reviewed. The trial court discussed potentially relevant documents with the custodians and ordered relevant documents to be disclosed to defendant.  The trial court ordered the transcript of the hearing sealed and granted defendant's motion in part, signing a protective order governing the disclosure of the relevant confidential information to defendant.

### B. Law

" '[A] criminal defendant may, in some circumstances, compel the discovery of evidence in [a] law enforcement officer's personnel file that is relevant to the defendant's ability to defend against a criminal charge.  "In 1978, the California Legislature codified the privileges and procedures surrounding what had come to be known as '*Pitchess* motions' … through the enactment of … sections 832.7 and 832.8 and Evidence Code sections 1043 and 1045." [Citations.]  By providing that the trial court should conduct an in camera review, the Legislature balanced the accused's need for disclosure of relevant information with the law enforcement officer's legitimate expectation of privacy in his or her personnel records.' " (*Garcia v. Superior Court* (2007) 42 Cal.4th 63, 69–70.)

After the defendant files a *Pitchess* motion, "[i]f the trial court concludes the defendant has fulfilled [the statutory] prerequisites and made a showing of good cause, the custodian of records should bring to court all documents 'potentially relevant' to the defendant's motion. [Citation.] The trial court 'shall examine the information in chambers' … 'out of the presence and hearing of all persons except the person authorized [to possess the records] and such other persons [the custodian of records] is willing to have present' …. Subject to statutory exceptions and limitations … the trial court should then disclose to the defendant 'such information [that] is relevant to the subject matter involved in the pending litigation.' " (*People v. Mooc* (2001) 26 Cal.4th 1216, 1226 (*Mooc*).)

In ruling on a *Pitchess* motion, it is essential that the trial court make a record of the particular files, records, or documents produced by the custodian for the court's review. (*Mooc*, *supra*, 26 Cal.4th at p. 1228.) There should be a court reporter present to document any statements by the custodian's responses thereto as to the records production. (*Id*. at p. 1229.) "The trial court should then make a record of what documents it examined before ruling on the *Pitchess* motion. Such a record will permit future appellate review. … Without some record of the documents examined by the trial court, a party's ability to obtain appellate review of the trial court's decision … would be nonexistent. Of course, to protect the officer's privacy, the examination of documents and questioning of the custodian should be done in camera in accordance with the requirements of Evidence Code section 915, and the transcript of the in camera hearing and all copies of the documents should be sealed." (*Id*. at pp. 1229–1230 [footnote omitted].) "[T]he locus of decisionmaking [at a *Pitchess* hearing] is to be the trial court, not the prosecution or custodian of records." (*Id*. at p. 1229.)

A failure to specify what documents in a file were not brought to court would not, by itself, result in an inadequate record. (*People v. Fuiava* (2012) 53 Cal.4th 622, 647 (*Fuiava*).) In *Fuiava*, the sole problem was "an absence of a statement from a custodian

11.

addressing what other documents might have been in the deputies' files that the sheriff's department deemed nonresponsive." (*Ibid.*) The *Fuiava* court found that, "[a]lthough the trial court did not ask the custodian whether there were other materials in the deputies' personnel files deemed nonresponsive to defendant's motion, and, if so, what those materials were, we conclude that in these circumstances the trial court did not err." (*Ibid.*) Further, "relief by way of a petition for a writ of habeas corpus would be available if defendant were to determine that documents improperly were withheld from the trial court, and defendant was prejudiced by the omission." (*Id.* at p. 648; *Mooc*, *supra*, 26 Cal.4th at pp. 1229–1230.)

A trial court's decision not to order the release of personnel records is reviewed for abuse of discretion. (*Mooc*, *supra*, 26 Cal.4th at p. 1228; *People v. Hughes* (2002) 27 Cal.4th 287, 330; *People v. Jackson* (1996) 13 Cal.4th 1164, 1220–1221; *Fagan v. Superior Court* (2003) 111 Cal.App.4th 607, 612.)

If a trial court is found to have abused its discretion in denying *Pitchess* discovery, a defendant is not entitled to relief unless he can demonstrate a reasonable probability of a different outcome had the evidence been disclosed. (*People v. Gaines* (2009) 46 Cal.4th 172, 182–183.)

### C.   Analysis

We find the trial court did not abuse its discretion in determining which documents to disclose as relevant to defendant's request during the *Pitchess* hearing.

After review of the record of defendant's in camera *Pitchess* motion hearing, we conclude that the trial court properly recorded the hearing, including the particular files, records, and documents produced by the custodians, with a court reporter recording a transcript of the proceedings and documenting any statements by the custodians as to the records production. The record of the in camera *Pitchess* hearing shows that the trial court was "the locus of [the] decisionmaking." (*Mooc*, *supra*, 26 Cal.4th at pp. 1228–1229.)

12.

Furthermore, the trial court did not err by failing to ask the custodians of the records whether there were other materials in the officers' personnel files deemed nonresponsive to defendant's motion, and, if so, what those materials were. The trial court asked both custodians whether there were any additional responsive documents that they did not bring with them to court for the in camera hearing, or any other files where potentially relevant documents might be found. Both replied there were not. As stated above, a failure to specify what documents in a file were not brought to court does not, by itself, result in an inadequate record. (*Fuiava*, *supra*, 53 Cal.4th at p. 647.) While the custodians here did not produce the officers' entire files for the court's review, they both established on the record for the trial court that they conducted a thorough and complete search of all possible locations where responsive documents could be located. It is apparent upon review of the record that the trial court was able to conclude from the nature of the documents not disclosed that they were nonresponsive or irrelevant to the discovery request. The trial court discussed several of the documents the custodians disclosed as potentially relevant and made the decision upon reviewing those documents that only some of them were in fact relevant to the case at hand, granting defendant's motion in part.

Having reviewed a transcript of the confidential hearing, as well as the material produced by the custodian of records, we find no abuse of discretion. The court appropriately disclosed the records relevant to the litigated matter. (See *Mooc*, *supra*, 26 Cal.4th at pp. 1228–1232; *Fuiava*, *supra*, 53 Cal.4th at p. 647.)

## DISPOSITION

The judgment is affirmed.