Filed 8/11/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>          Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF SAN FRANCISCO COUNTY,<br><br>          Respondent;<br><br>DARYL LEE JOHNSON,<br><br>          Real Party in Interest. | A140767<br><br>(San Francisco County<br>Super. Ct. No. 12029482) |
| CITY AND COUNTY OF SAN FRANCISCO ex rel. THE SAN FRANCISCO POLICE DEPARTMENT,<br><br>          Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF SAN FRANCISCO COUNTY,<br><br>          Respondent;<br><br>THE PEOPLE et al.,<br><br>          Real Parties in Interest. | A140768<br><br>(San Francisco County<br>Super. Ct. No. 12029482) |

          This case presents an issue of first impression: In fulfilling its federal constitutional duty to disclose exculpatory evidence to a criminal defendant under *Brady*

1

*v. Maryland* (1963) 373 U.S. 83 (*Brady*), is the prosecution entitled to direct access to peace officer personnel files? In this consolidated writ proceeding, petitioners the San Francisco District Attorney and the San Francisco Police Department[1] argue that in this state such access is barred by Penal Code section 832.7, subdivision (a) ("Section 832.7(a)"). Section 832.7(a) is among the statutes adopted by the Legislature to codify the decision in *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*), regarding the discovery in criminal cases of citizen complaints against law enforcement witnesses. Section 832.7(a) provides, in part, that peace officer personnel records are confidential and may be disclosed in a criminal proceeding only pursuant to a motion under Evidence Code section 1043 ("Section 1043"). Petitioners argue that, because Section 832.7(a) bars direct prosecutorial access to these files, the trial court is required, after a proper showing by the prosecution, to conduct the *Brady* review of the files to identify materials that must be disclosed to the defendant. Petitioners suggest the prosecution may obtain such a review and disclosure by filing a motion under Section 1043.

Respondent superior court rejected petitioners' contentions, concluding that Section 1043 does not apply to motions seeking review of peace officer personnel records under *Brady*, and Section 832.7(a) is unconstitutional to the extent it bars the prosecution from obtaining access to officer personnel records in order to comply with *Brady*. The court directed the SF Police Department to give the District Attorney access to the relevant officer personnel files so that the District Attorney can comply with *Brady's* disclosure obligations.

We deny the writ petitions to the extent they challenge the respondent superior court's order requiring the SF Police Department to provide the prosecution access to

---

[1] One petition (A140767) was filed in the name of the People of the State of California, represented by the San Francisco District Attorney (hereafter referred to as the "People," "District Attorney," "prosecution," or "prosecutor"). The other petition (A140768) was filed by the City and County of San Francisco through the San Francisco Police Department (referred to herein as the "SF Police Department"). Defendant Johnson is a real party in interest in both petitions, and the People are an additional real party in interest in the SF Police Department's petition.

2

officer personnel files to allow for identification of any *Brady* materials in those files. We conclude that Section 832.7(a), properly interpreted, does not create a barrier between the prosecution and the performance of its duty under *Brady*; our construction of Section 832.7(a) makes it unnecessary to consider the constitutionality of barring prosecutorial access to officer personnel files for the purpose of identifying *Brady* materials therein.[2] On the other hand, we grant the writ petitions to the extent they challenge the respondent superior court's refusal to consider any request for disclosure of *Brady* materials pursuant to a motion under Section 1043. We conclude that, prior to disclosure to the defendant of any *Brady* material identified by the District Attorney, the prosecution must seek an order authorizing such disclosure under Section 1043.

BACKGROUND

The two petitions for writ of mandate/prohibition involved in the present proceeding arise from a felony domestic violence case, *People v. Daryl Lee Johnson* (San Francisco Superior Court No. 12029482).

On November 14, 2012, the District Attorney filed a complaint charging defendant Johnson with one count of felony domestic violence (Pen. Code, § 273.5, subd. (a)), and one count of misdemeanor injuring a wireless communication device (Pen. Code, § 591.5). At the December 2013 preliminary hearing, police officer Paul Dominguez testified regarding an incident on November 11, 2012 during which he and police officer Antonio Carrasco responded to a 911 call from a residence in San Francisco. Johnson admitted he hit the victim, a female minor; Johnson claimed the minor had "[m]aced" him. The victim showed Officer Dominguez a two inch lump on the back of her head where Johnson struck her. She also told the officer Johnson had tried to prevent her from calling 911 by grabbing her cell phone and then a cordless phone out of her hands.

---

[2] In *City of Los Angeles v. Superior Court* (*Brandon*) (2002) 29 Cal.4th 1 (*Brandon*), the California Supreme Court reserved "the question of whether Penal Code section 832.7, which precludes disclosure of officer records 'except by discovery pursuant to Sections 1043 and 1046 of the Evidence Code,' would be constitutional if it were applied to defeat the right of the prosecutor to obtain access to officer personnel records in order to comply with *Brady*." (*Brandon*, at p. 12, fn. 2.)

3

<u>The District Attorney's Motion for In Camera *Brady* Review</u>

In December 2013, the prosecution filed a "Notice of Motion for Discovery of San Francisco Police Department Peace Officer Personnel Records Under *Brady* and Evidence Code Sections 1043 and 1045(e)." The motion requested that the court conduct an in camera review of personnel records of Officers Dominguez and Carrasco to determine whether any items in their files were material under *Brady* and therefore subject to disclosure.[3] It also requested that the court "disclose to the District Attorney's Office and the defense any *Brady* material located in the personnel files, and . . . issue a protective order to protect the officers' statutory right of privacy in their personnel files."

The December 2013 motion was supported by a declaration from the assistant district attorney prosecuting the case. The declaration averred that Officers Dominguez and Carrasco "are necessary and essential witnesses for the prosecution in this case on virtually all the issues and each of the counts charged." The SF Police Department had informed the prosecution that each of the officers had "material in his . . . personnel file that *may be* subject to disclosure under" *Brady*. (Italics added.) The declaration did not state that the prosecutor had viewed the potential *Brady* material. Instead, it stated the records were in the "exclusive possession and control" of the SF Police Department and the District Attorney did not have "actual" or "constructive" possession of the records. Nevertheless, the prosecutor averred that, based on the representation from the SF Police Department that the files contained potential *Brady* material, she "believe[s]" the officers' personnel files contain "sustained allegations of <u>specific *Brady* misconduct</u>, reflective of dishonesty, bias, or evidence of moral turpitude. I believe on these case facts, and given the officers' roles, that such misconduct would be constitutionally material to the instant case in the *Brady* sense." The declaration further explained that the records "are material to the pending litigation in that they pertain to the credibility of

---

[3] The trial court previously denied a similar prosecutorial motion with respect to Officer Carrasco only. The trial court's order following the December 2013 motion is the order at issue in this proceeding.

4

a necessary and material prosecution witness, and could either impeach said witness or lead to evidence exonerating the defendant."

Bureau Order No. 2010-01

The prosecution's December 2013 motion was in accordance with the SF Police Department's Bureau Order No. 2010-01 ("Bureau Order"), which established the department's procedures for *Brady* disclosure of materials in employee personnel files.[4] A premise underlying the Bureau Order is that the District Attorney cannot legally access confidential officer personnel files absent a trial court order obtained pursuant to a motion under Section 1043. The Bureau Order explains its purpose as follows: Because "[r]epetitive requests by the District Attorney that the [SF Police] Department check employee personnel files of Department employees who may be witnesses create unnecessary paperwork and personnel costs . . . the Department is adopting a procedure under which the Department advises the District Attorney's Office of the names of employees who have information in their personnel files that may require disclosure under *Brady*. The District Attorney's Office then makes a motion under Evidence Code 1043 and 1045 for *in camera* review of the records by the court."

The Bureau Order includes examples and definitions of evidence that may constitute "potential '*Brady* material.' " The Bureau Order contemplates that potential *Brady* material will be identified on an ongoing basis and that the District Attorney's office will be notified on an ongoing basis that the personnel files for particular officers may contain *Brady* material. When the SF Police Department becomes aware of potential *Brady* material regarding an officer, a synopsis is created identifying the employee, the conduct at issue, and the documents and information for potential disclosure. Thereafter, a departmental " '*Brady* Committee' " meets to review the synopsis and recommend to the Chief of Police whether the employee's name should be

---

[4] The Bureau Order relates to both police officer and civilian personnel records, but we refer herein only to officer personnel records.

5

disclosed to the District Attorney.[5]  The Chief of Police approves or disapproves the committee's recommendation.  If disclosure of an officer's name is approved, the District Attorney is notified only that the officer "has material in his or her personnel file that may be subject to disclosure under" *Brady*.

The Bureau Order contemplates that the District Attorney "will create a list of Department employees who have potential *Brady* material in their personnel files."  It further contemplates that, "When the District Attorney's office deems that a law enforcement officer, identified by the Department as having possible *Brady* material in their personnel file, is a material witness in a pending criminal case . . . the District Attorney shall make a 'Brady' motion under Evidence Code Sections 1043 and 1045(e) to the court for *in-camera* review of the records."  The SF Police Department will not disclose material from officer personnel files to any party absent a trial court order for disclosure.  In its conclusion, the Bureau Order explains, "The purpose of this procedure is to ensure that prosecutors and the defense receive sufficient information to comply with the constitutional requirements of *Brady* while protecting the legitimate privacy rights of law enforcement witnesses."

Defendant Johnson's and the SF Police Department's Responses

Defendant Johnson responded to the prosecutor's December 2013 motion with his own "Motion for Brady discovery."  Johnson requested that the trial court either conduct the requested in camera *Brady* review; declare Section 832.7(a) unconstitutional and direct the SF Police Department to allow the prosecutor to access the officer personnel files to perform a *Brady* materiality review; or dismiss the case due to the prosecution's failure to comply with *Brady*.  Johnson indicated his belief that he could not himself obtain disclosure of the material in the personnel files, stating, "defendant knows only that those files contain potential *Brady* material, but cannot move for it specifically because . . . he does not know what it is, or how it might impact his defense."

---

[5]     This committee consists of the Assistant Chief of the Office of Chief of Staff, the Director of Risk Management, the head of the Legal Division, the Director of Staff Services, the author of the synopsis, and a retired judge with criminal law experience.

6

The SF Police Department responded to the prosecutor's motion, generally expressing agreement with the positions taken by the prosecutor and urging the trial court to perform the in camera review contemplated by the Bureau Order's *Brady* disclosure protocol.

The Trial Court's Ruling

On January 7, 2014, following a hearing, the superior court issued a lengthy "Order Re *Brady* Motions." The court concluded the prosecution had not made a sufficient showing of *Brady* materiality to justify court review of the records.[6] The court also concluded that the *Pitchess* motion procedures (§ 1043 et seq.) do not apply to motions seeking review of police officer personnel records under *Brady*, and Section 832.7(a) is unconstitutional to the extent it bars the prosecution from obtaining access to officer personnel records in order to comply with *Brady*.

The trial court denied the prosecution's Section 1043 motion for in camera *Brady* review and directed the SF Police Department "to give the District Attorney access to the personnel files of officers Dominguez and Carrasco 'so the prosecution can comply with its *Brady* mandate[.]' " The order continued, "Once the District Attorney has reviewed the personnel records, he will be able to fulfill his constitutional obligation to disclose to the Public Defender any information that is material under *Brady*. If a close question nonetheless remains as to whether information in a specific document or documents should be disclosed under *Brady*, the District Attorney will be able to make the threshold" materiality showing necessary to justify review of the documents by the trial court.

The Present Writ Proceeding

Petitioners filed the present petitions on January 17, 2014. Petitioners seek issuance of a writ of mandate and/or prohibition ordering respondent superior court to

---

[6] The prosecution argued it only needed to make " 'some plausible showing' " the personnel files contain *Brady* material and the showing could be made by informing the trial court that the officers were critical witnesses and the SF Police Department had indicated the files had potential *Brady* material.

vacate its January 2014 order denying the prosecution's Section 1043 motion, directing the SF Police Department to give the prosecution access to officer personnel files, and declaring Section 832.7(a) unconstitutional. Petitioners request that this court direct respondent court to accept the officer personnel records proffered by the SF Police Department and to review the records in camera and disclose all *Brady* materials to both the prosecution and defense counsel, subject to a protective order.[7]

This court stayed the January 2014 order and trial in defendant Johnson's criminal case, consolidated the two writ proceedings, and directed the respondent court to show cause why the relief requested in the petitions should not be granted. This court also granted applications for leave to file amicus curiae briefs supporting petitioners by the Appellate Committee of the California District Attorneys Association, the Ventura County District Attorney, the Santa Clara County District Attorney, and the Police Officers' Research Association of California et al. This court also granted the respondent superior court's request to file a response to the petitions, and the Attorney General filed an amicus curiae brief.[8]

## DISCUSSION

This case is the latest in a body of case law considering the "interplay" between the United States Supreme Court's 1963 decision in *Brady*, *supra*, 373 U.S. 83, and the statutory discovery procedures enacted by the California Legislature after the California Supreme Court's decision in *Pitchess, supra,* 11 Cal.3d 531. (*Brandon*, *supra*, 29 Cal.4th at p. 7.) "In *Brady*, the high court announced a rule, founded on the due process guarantee of the federal Constitution, that requires the prosecution to disclose evidence that is favorable and 'material' to the defense." (*Ibid*.) The *Pitchess* procedures include,

---

[7] In his briefing in this writ proceeding, defendant and real party in interest Johnson does not object to the relief sought by petitioners, involving in camera *Brady* review by the trial court.

[8] On April 21, 2014, respondent superior court filed a motion for judicial notice of the "Budget Snapshot" for the court's 2014-2015 fiscal year. Because the budgetary constraints faced by the court are not relevant to the issues of law we decide in this writ proceeding, the motion for judicial notice is denied.

among others, the key statutory provisions at issue in the present case, Section 832.7(a), Section 1043, and Evidence Code section 1045 ("Section 1045").[9] Section 832.7(a) declares that peace officer personnel records "are confidential and shall not be disclosed in any criminal or civil proceeding except by discovery pursuant" to Section 1043.[10] Section 1043 sets forth requirements for a motion seeking "discovery or disclosure" of peace officer personnel records, and Section 1045 contains "protective provisions" related to officer privacy interests. (*City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 74, 83 (*City of Santa Cruz*).)

At issue in this case is whether the prosecution may routinely require the trial court to conduct the initial *Brady* materiality review of documents from officer personnel files identified by the SF Police Department as containing potential *Brady* material.[11] Petitioners argue Section 832.7(a) prohibits the prosecution from accessing officer personnel files absent a motion under Section 1043. They contend the trial court erred in denying the prosecution's request under Section 1043 that the court perform an in camera *Brady* review of the documents identified by the SF Police Department and that the court authorize the disclosure to the parties of any evidence the court deemed material under *Brady*. They further contend the trial court erred in concluding that Section 832.7(a) is

---

[9]     Unless otherwise indicated, all further undesignated statutory references are to the Evidence Code.

[10]     Section 832.7(a) also references section 1046, but that provision is not relevant in the present case. Section 1046 contains special requirements applicable to requests for disclosure involving allegations of excessive force.

[11]     Petitioners may take issue with our suggestion that they seek to "routinely" shift review to the trial court. However, their position essentially would shift the responsibility for identifying *Brady* material in officer personnel files to the trial court; such a categorical change is properly characterized as mandating routine trial court review for those materials. The prosecution informed the trial court that the District Attorney's office would be making approximately 250 requests for such reviews each year. Petitioners may also take issue with our characterization of the requested trial court review as the "initial" *Brady* materiality review, because they seek for the court to review a pool of potential exculpatory materials identified by the SF Police Department. But the SF Police Department review is not a review for *Brady* materiality in the context of a particular case, so the requested trial court review would be the first true *Brady* review.

unconstitutional to the extent it denies prosecutorial access to officer personnel files for *Brady* purposes, and in directing the SF Police Department to give the prosecution access to the personnel files of two officer witnesses, so that the prosecution could identify any materials required to be disclosed under *Brady*.

We conclude that, properly construed, Section 832.7(a) does not preclude prosecutorial access to officer personnel files for *Brady* purposes. Thus, we need not reach the constitutionality issue addressed by the trial court and reserved in *Brandon*, *supra*, 29 Cal.4th at page 12, footnote 2. At various places in our opinion we refer to the initial review and identification of *Brady* materials by the prosecution as the "first stage" of the *Brady* disclosure process. We further conclude that, prior to disclosing the identified *Brady* material to the defendant, the prosecution must file a motion for such disclosure under Section 1043. We refer to this request for disclosure as the "second stage" of the *Brady* disclosure process. This resolution is consistent with the statutory language, the Legislature's intent for a judicial role in disclosure to protect officer privacy, and the prosecution's federal constitutional obligations under *Brady*.

I.    *Standard of Review and Statutory Interpretation Principles*

Resolution of the issues in this writ proceeding turns on the interpretation of statutes, primarily Section 832.7(a) and Section 1043. Our review is de novo. (*Ceja v. Rudolph & Sletten, Inc.* (2013) 56 Cal.4th 1113, 1119.)

" 'As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose.' [Citation.] The well-established rules for performing this task require us to begin by examining the statutory language, giving it a plain and commonsense meaning. [Citation.] We do not, however, consider the statutory language in isolation; rather, we look to the statute's entire substance in order to determine its scope and purposes. [Citation.] That is, we construe the words in question in context, keeping in mind the statute's nature and obvious purposes. [Citation.] We must harmonize the statute's various parts by considering it in the context of the statutory framework as a whole. [Citation.] If the statutory language is unambiguous, then its plain meaning controls. If, however, the

10

language supports more than one reasonable construction, then we may look to extrinsic aids, including the ostensible objects to be achieved and the legislative history. [Citation.]" (*Los Angeles County Metropolitan Transportation Authority v. Alameda Produce Market, LLC* (2011) 52 Cal.4th 1100, 1106-1107.)

II.      *The Prosecution's Disclosure Obligations Under* Brady

"In *Brady*, the United States Supreme Court held 'that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.' [Citation.] The high court has since held that the duty to disclose such evidence exists even though there has been no request by the accused [citation], that the duty encompasses impeachment evidence as well as exculpatory evidence [citation], and that the duty extends even to evidence known only to police investigators and not to the prosecutor [citation]. Such evidence is material ' "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." ' [Citation.]" (*People v. Salazar* (2005) 35 Cal.4th 1031, 1042.)

"Responsibility for *Brady* compliance lies exclusively with the prosecution[.]" (*In re Brown* (1998) 17 Cal.4th 873, 878 (*Brown*).) "The scope of this disclosure obligation extends beyond the contents of the prosecutor's case file and encompasses the duty to ascertain as well as divulge 'any favorable evidence known to the others acting on the government's behalf. . . .' [Citation.] Courts have thus consistently 'decline[d] "to draw a distinction between different agencies under the same government, focusing instead upon the 'prosecution team' which includes both investigative and prosecutorial personnel." ' [Citation.]" (*Id.* at p. 879; see also *Brandon*, *supra*, 29 Cal.4th at p. 8 [the *Brady* disclosure requirement "encompasses evidence 'known only to police investigators and not to the prosecutor' "].) Thus, "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." (*Kyles v. Whitley* (1995) 514 U.S. 419, 437 (*Kyles*); accord *Youngblood v. West Virginia* (2006) 547 U.S. 867, 869-870; *People v. Whalen* (2013) 56

11

Cal.4th 1, 64; *Brandon*, *supra*, 29 Cal.4th at p. 8.) This is because *Brady* places on the prosecution an "affirmative duty to disclose evidence favorable to a defendant" (*Kyles*, at p. 432), and " 'procedures and regulations can be established to carry [the prosecutor's] burden and to insure communication of all relevant information on each case to every lawyer who deals with it.' [Citation.]" (*Id.* at p. 438.) *Kyles* continued, "Since, then, the prosecutor has the means to discharge the government's *Brady* responsibility if he will, any argument for excusing a prosecutor from disclosing what he does not happen to know about boils down to a plea to substitute the police for the prosecutor, and even for the courts themselves, as the final arbiters of the government's obligation to ensure fair trials." (*Kyles*, at p. 438; accord *Brown*, at p. 881.)

As the California Supreme Court emphasized in *Brown*, "the Supreme Court has unambiguously assigned the duty to disclose solely and exclusively to the prosecution; those assisting the government's case are no more than its agents. [Citations.] By necessary implication, the duty is nondelegable at least to the extent the prosecution remains responsible for any lapse in compliance. Since the prosecution must bear the consequences of its own failure to disclose [citations], a fortiori, it must be charged with any negligence on the part of other agencies acting in its behalf [citations]." (*Brown*, *supra*, 17 Cal.4th at p. 881.)

III.     *The* Pitchess *Decision and Its Codification in Statutory Law*

In *Pitchess*, *supra*, 11 Cal.3d 531, the California Supreme Court held criminal defendants have a right to discover citizen complaints of misconduct found in peace officer personnel files. Specifically, the court permitted the defendant, charged with battery on sheriff's deputies, to discover any complaints of excessive force in the deputies' personnel files. (*Id.* at p. 534.) The holding was an extension of "judicially created doctrine evolving in the absence of guiding legislation . . . based on the fundamental proposition that [the accused] is entitled to a fair trial and an intelligent defense in light of all relevant and reasonably accessible information." (*Id.* at p. 535.) The court explained that a defendant "may compel discovery by demonstrating that the requested information will facilitate the ascertainment of the facts and a fair trial." (*Id.* at

12

p. 536.) "The requisite showing may be satisfied by general allegations which establish some cause for discovery other than 'a mere desire for the benefit of all information which has been obtained by the People in their investigation of the crime.' [Citations.]" (*Id.* at p. 537.) Although the *Pitchess* procedures "must be viewed against the larger background of the prosecution's constitutional obligation to disclose to a defendant material exculpatory evidence so as not to infringe the defendant's right to a fair trial," (*People v. Mooc* (2001) 26 Cal.4th 1216, 1225 (*Mooc*)), the *Pitchess* decision itself did not actually rely on the prosecutor's obligations under *Brady* as a basis for its holding.

In 1978, the California Legislature "codified the privileges and procedures surrounding what had come to be known as '*Pitchess* motions' . . . through the enactment of Penal Code sections 832.7 and 832.8 and Evidence Code sections 1043 through 1045." (*City of Santa Cruz*, *supra*, 49 Cal.3d at p. 81, fn. omitted.) *City of Santa Cruz* described the statutory scheme as follows: "The Penal Code provisions define 'personnel records' (Pen. Code, § 832.8) and provide that such records are 'confidential' and subject to discovery only pursuant to the procedures set forth in the Evidence Code. (Pen. Code, § 832.7.) [S]ections 1043 and 1045 set out the procedures for discovery in detail. As here pertinent, section 1043, subdivision (a) requires a written motion and notice to the governmental agency which has custody of the records sought, and subdivision (b) provides that such motion shall include, inter alia, '(2) A description of the type of records or information sought; and [¶] (3) Affidavits showing good cause for the discovery or disclosure sought, setting forth the materiality thereof to the subject matter involved in the pending litigation and stating upon reasonable belief that such governmental agency identified has such records or information from such records.' " (*City of Santa Cruz*, at pp. 81-83.)

*City of Santa Cruz* continued: "A finding of 'good cause' under section 1043, subdivision (b) is only the *first* hurdle in the discovery process. Once good cause for discovery has been established, section 1045 provides that the court shall then examine the information 'in chambers' in conformity with section 915 (i.e., out of the presence of all persons except the person authorized to claim the privilege and such other persons as

13

he or she is willing to have present), and shall *exclude* from disclosure several enumerated categories of information, including: (1) complaints more than five years old, (2) the 'conclusions of any officer investigating a complaint . . .' and (3) facts which are 'so remote as to make disclosure of little or no practical benefit.' (§ 1045, subd. (b).)" (*City of Santa Cruz*, *supra*, 49 Cal.3d at p. 83; accord *Alford v. Superior Court* (2003) 29 Cal.4th 1033, 1039 (*Alford*).) "The statutory scheme thus carefully balances two directly conflicting interests: the peace officer's just claim to confidentiality, and the criminal defendant's equally compelling interest in all information pertinent to his defense. The relatively relaxed standards for a showing of good cause under section 1043, subdivision (b)—'materiality' to the subject matter of the pending litigation and a 'reasonable belief' that the agency has the type of information sought—insure the production for inspection of all potentially relevant documents. The in camera review procedure and disclosure guidelines set forth in section 1045 guarantee, in turn, a balancing of the officer's privacy interests against the defendant's need for disclosure. As a further safeguard, moreover, the courts have generally refused to disclose verbatim reports or records of any kind from peace officer personnel files, ordering instead . . . that the agency reveal only the name, address and phone number of any prior complainants and witnesses and the dates of the incidents in question. [Citations.]" (*City of Santa Cruz*, at p. 84, fns. omitted; see also *Mooc*, *supra*, 26 Cal.4th at p. 1227.) [12]

IV.  *Section 832.7(a) Does Not Preclude Prosecutorial Access to Officer Personnel Files for* Brady *Purposes*

Section 832.7(a) provides: "Peace officer or custodial officer personnel records and records maintained by any state or local agency pursuant to Section 832.5, or information obtained from these records, are confidential and shall not be disclosed in any criminal or civil proceeding except by discovery pursuant to Sections 1043 and 1046

---

[12] Due to this limitation on discovery under *Pitchess*, the potential material for disclosure under *Brady* may be much more extensive than the potential material for disclosure under *Pitchess*. In the present case, for example, the prosecution indicated that a previous *Pitchess* motion resulted in the disclosure of six pages; in contrast, there were 505 pages of potential *Brady* material.

14

of the Evidence Code.  This section shall not apply to investigations or proceedings concerning the conduct of peace officers or custodial officers, or an agency or department that employs those officers, conducted by a grand jury, a district attorney's office, or the Attorney General's office."  As noted previously, Section 832.7(a) was adopted by the Legislature as part of the codification of the *Pitchess* decision.  The stated purpose of the bill that resulted in the enactment of Section 832.7(a) and Sections 1043 and 1045 was " 'to give the peace officer and his or her employing agency the right to refuse to disclose any information concerning the officer or complaints or investigations of the officer in both criminal and civil proceedings. . . .  Personnel files of peace officers . . . are deemed confidential and not subject to disclosure or discovery except as provided in this bill.' " (Assem. Com. on Crim. J., Bill Analysis on Sen. Bill No. 1436 (as amended Aug. 7, 1978); see also *County of Los Angeles v. Superior Court* (1990) 219 Cal.App.3d 1605, 1609.)

In complying with *Brady* with respect to materials in peace officer personnel files, there are two analytically distinct stages, identification and disclosure.  The first requires access to officer personnel files to identify materials that must be disclosed under *Brady*. The second stage is disclosure of *Brady* materials to the defendant in a criminal proceeding.  Petitioners contend that Section 832.7(a), by effectively precluding prosecutorial access to the personnel files, requires, at the first stage, that the trial court make the decision as to what must be disclosed under *Brady* without identification by the prosecutor of the materials that should be disclosed.  As explained below, we disagree that Section 832.7(a) eliminates prosecutorial access; although the statute specifies procedures for the second stage *disclosure* of *Brady* materials in criminal proceedings (see Part VII., *post*), it does not prohibit the prosecutor, as the head of the prosecution team, from performing the constitutionally mandated role of identifying *Brady* materials in the personnel files.  In particular, when a prosecutor acting as the head of a prosecution team inspects officer personnel files, or portions thereof, for *Brady* purposes, that inspection does not constitute disclosure of the files in a criminal proceeding, or otherwise breach the confidentiality of the files.

15

A. *Prosecutorial Access to Personnel Records for* Brady *Purposes Does Not Constitute Disclosure of the Files in a Criminal Proceeding*

In determining whether prosecutorial access to officer personnel files constitutes a disclosure prohibited by Section 832.7(a), the decision in *Michael v. Gates* (1995) 38 Cal.App.4th 737 (*Gates*), provides guidance.  There, in an earlier proceeding, a police department permitted a deputy city attorney to review the personnel records of a former police officer, in order to identify impeachment evidence for use in a lawsuit against the department, in which the former officer was an expert witness for the plaintiff.  (*Id.* at p. 740.)  No evidence from the personnel records was actually introduced in the case.  (*Ibid.*)  Subsequently, the former officer sued members of the police department and city attorney's office, alleging, among other things, invasion of his right to privacy and violation of Section 832.7(a) and Section 1043.  (*Gates*, at p. 741.)  As petitioners argue in the present case, the former officer in *Gates* argued the deputy city attorney was prohibited from reviewing the personnel files without a noticed motion under Section 1043 "and, presumably, without obtaining a court order after the in camera hearing prescribed in Evidence Code section 1045."  (*Gates*, at p. 743.)

In holding that the officer's claims failed, *Gates* focused on the language in Section 832.7(a) directing that officer personnel records "shall not be disclosed in any criminal or civil proceeding except by discovery pursuant to Sections 1043 and 1046 of the Evidence Code."  *Gates* concluded there was no " 'discovery or disclosure' of [the officer's] records within the meaning of the statutes."  (*Gates*, *supra*, 38 Cal.App.4th at p. 743.)  The court reasoned:  "[Section 1043] applies to 'any case in which discovery or disclosure' of peace officer personnel records is sought.  The statutes thus protect [officer] privacy rights by requiring a noticed motion, in camera hearing, and court order before [officer] records could be introduced or otherwise used in any litigation."  (*Gates*, at p. 743.)  But the legislative intent "to balance a litigant's need to present a case and a peace officer's right to privacy . . . would not be advanced by extending the procedural requirements to a preliminary review of peace officer records, where there is no disclosure in litigation, and no 'discovery.'  In ordinary legal usage, 'discovery' refers to

the inspection of documents and other materials in the possession or control of an adverse party in litigation, a process which has as its principle purpose the elimination of the 'game' element of litigation. [Citation.] There is no suggestion that the Legislature intended any other meaning here. An agency which reviews its own records with its attorney has not engaged in discovery." (*Id.* at p. 744.)

*Gates* stated its holding as follows: "Thus, we hold that where, as here, a governmental agency and its attorney conduct a contained and limited review of peace officer personnel files within the custody and control of the agency, for some relevant purpose, there is no disclosure under the statutes. The statutory scheme is designed to protect peace officers' 'just claim to confidentiality' and to regulate the use of peace officer personnel records in civil and criminal proceedings. [Citation.] It was not intended to, and does not, create substantive or procedural obstacles to a police agency's review of its own files." (*Gates*, *supra*, 38 Cal.App.4th at p. 745.)

The present case is not materially distinguishable. Under Government Code section 26500, the District Attorney is the public prosecutor in a criminal prosecution, representing the People of the State of California. (*Dix v. Superior Court* (1991) 53 Cal.3d 442, 451.) As noted previously, the District Attorney leads a " ' " 'prosecution team' " which includes both investigative and prosecutorial personnel.' [Citation.]" (*Brown*, *supra*, 17 Cal.4th at p. 879, fn. omitted.) Due to the " 'close working relationship' " between the police and prosecutors (*id.* at p. 879, fn. 3, quoting *U.S. v. Brooks* (D.C. Cir. 1992) 966 F.2d 1500, 1503 (*Brooks*)), courts in the *Brady* context have "consistently" declined to distinguish between separate agencies of the same government that are part of the prosecution team (*Brown*, at p. 879; see also *id.* at p. 881 ["those assisting the government's case are no more than its agents"]). Even though the District Attorney in a criminal prosecution is not the attorney for the SF Police Department in the same sense as in *Gates*, the joint operation of the agencies as a prosecution team is a sufficiently analogous relationship, justifying the same result under Section 832.7(a).

17

We therefore conclude the reasoning of *Gates* is applicable in the present case.[13] In particular, a prosecutorial inspection of an officer's personnel file for *Brady* purposes is not a disclosure of the file within the criminal proceeding.

> B. *Prosecutorial Access to Personnel Records for* Brady *Purposes Would Not Breach the Confidentiality of the Files*

A separate issue not directly addressed in *Gates* is the significance of Section 832.7(a)'s designation of officer personnel files as "confidential."  (§ 832.7(a) [records are "confidential and shall not be disclosed in any criminal or civil proceeding except by discovery pursuant to Sections 1043 and 1046 of the Evidence Code"].)

In *Copley Press, Inc. v. Superior Court* (2006) 39 Cal.4th 1272, 1279 (*Copley*), the California Supreme Court held that the word "confidential" in Section 832.7(a) has independent significance.  There, the court considered a newspaper publisher's request under the California Public Records Act for records relating to a peace officer's administrative appeal of a disciplinary matter.  The publisher argued Section 832.7(a) did not apply because it was not seeking disclosure in a criminal or civil proceeding. (*Copley*, at p. 1284.)  *Copley* concluded the records were nonetheless confidential and not subject to disclosure under the Public Records Act, reasoning, "If, in passing section 832.7, the Legislature had intended 'only to define procedures for disclosure in criminal and civil proceedings, it could have done so by stating that the records "shall not be disclosed in any criminal or civil proceeding except by discovery pursuant to Sections 1043 and 1046 of the Evidence Code . . . ," without also designating the information "confidential." [Citation.]' [Citations.]  Thus, by interpreting the word 'confidential'

---

[13]    The authors of the treatise California Criminal Discovery reach the same conclusion, stating:  "When the district attorney (or Attorney General) prosecutes a criminal case arising out of an investigation by a law enforcement agency, the investigating law enforcement agency is part of the 'prosecution team,' the district attorney is the attorney for the 'prosecution team,' and the disclosure to the district attorney of the contents of the personnel records of a police officer employed by that investigating law enforcement agency does not constitute 'disclosure' of the personnel records within the meaning of Penal Code section 832.7(a)."  (Pipes & Gagen, Cal. Criminal Discovery (4th ed. 2008) § 10:20.3.1, p. 964.)

18

[citation] as 'establish[ing] a general condition of confidentiality' [citation], and interpreting the phrase 'shall not be disclosed in any criminal or civil proceeding except by discovery pursuant to Sections 1043 and 1046 of the Evidence Code' [citation] as 'creat[ing] a *limited exception* to the general principle of confidentiality,' we 'give[ ] meaning to both clauses' of the provision in question. [Citation.]" (*Copley*, at p. 1285.) Because the personnel files were "confidential," they were exempt from disclosure under the Public Records Act (Gov. Code, § 6254, subd. (k)).[14] (*Copley*, at p. 1283; see also *Long Beach Police Officers Assn. v. City of Long Beach* (2014) 59 Cal.4th 59, 67; *City of Richmond v. Superior Court* (1995) 32 Cal.App.4th 1430, 1440.)

Although the officer personnel files within the scope of Section 832.7(a) are confidential and may not be disclosed publicly pursuant to the Public Records Act, neither *Copley*, nor the Court of Appeal decisions *Copley* cites (*Copley*, *supra*, 39 Cal.4th at pp. 1284-1285 & fn. 5), address whether permitting a prosecutor to inspect officer personnel files in the possession of another member of the prosecution team would constitute a breach of confidentiality. The term "confidential" is undefined in the statute and ambiguous. The dictionary defines "confidential" as "communicated, conveyed, acted on, or practiced in confidence : known only to a limited few : not publicly disseminated : PRIVATE, SECRET." (Webster's 3d New Internat. Dict. (2002) p. 476.) Clearly the term prohibits public disclosure of information from officer personnel files, but it is otherwise unclear what limits it sets on access. It does not create an absolute bar to access, because presumably members of a police department that have legitimate reasons for accessing officer personnel files do not thereby breach the confidentiality of the files. It also seems safe to assume that designating the files as confidential means that government employees both inside and outside the police department that do *not* have a legitimate basis for accessing officer personnel files cannot do so. However, the scope of the confidentiality is otherwise unclear.

---

[14] Government Code section 6254, subdivision (k) exempts from disclosure "[r]ecords, the disclosure of which is exempted or prohibited pursuant to federal or state law, including, but not limited to, provisions of the Evidence Code relating to privilege."

Where a "statute is ambiguous, we may consider a variety of extrinsic aids, including legislative history, the statute's purpose, and public policy. [Citation.]" (*People v. Gonzalez* (2008) 43 Cal.4th 1118, 1126.) " 'We must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' [Citation.]" (*People v. Coronado* (1995) 12 Cal.4th 145, 151.) The Legislature's intent in enacting the statutory *Pitchess* procedures has been summarized as follows: "The report by the Senate Committee on the Judiciary indicates that the main purpose of the 1978 legislation (Sen. Bill No. 1436) was to curtail the practice of record shredding and discovery abuses which allegedly occurred in the wake of the [*Pitchess*] decision. [¶] The analysis of Senate Bill No. 1436 prepared for the Assembly Committee on Criminal Justice notes that '[t]he thrust of this bill is to give the peace officer and . . . employing agency the right to refuse to disclose any information concerning the officer or complaints or investigations . . . in both criminal and civil proceedings.' . . . [¶] The report also explained that the purpose of the bill was to protect personnel records from random discovery by defendants asserting self-defense to charges of criminal assault upon a police officer. Thus, the Legislature evidenced its purpose to provide retention of relevant records while imposing limitations upon their discovery and dissemination." (*San Francisco Police Officers' Assn. v. Superior Court* (1988) 202 Cal.App.3d 183, 189-190; accord *Berkeley Police Assn. v. City of Berkeley* (2008) 167 Cal.App.4th 385, 393; see also Assem. Com. on Crim. Justice, analysis of Sen. Bill No. 1436, Aug. 18, 1978, p. 2 ["*Discovery* of police personnel files is limited to those instances set forth in Section 1043 of the Evidence Code as added by this bill."], italics added.)

Thus, the Legislature's intent was to protect officer personnel files from public disclosure, and to specify a procedure for discovery of information in such files. The committee reports associated with the enactment never make *any* reference to *Brady*, or express concern with prosecutorial access to personnel files. (See Neri, *Pitchess v. Brady: The Need for Legislative Reform of California's Confidentiality Protection for*

*Peace-Officer Personnel Information* (2012) 43 McGeorge L. Rev. 301, 304 (hereafter Neri) ["The *Pitchess* laws were neither designed to facilitate, nor do they mention, prosecutors' *Brady* duties. Instead, they address only state-law issues regarding criminal discovery and officer privacy rights." (Italics added.)].) The legislative history does not support a construction that would deem prosecutorial inspection of officer personnel files for *Brady* purposes a breach of confidentiality within the meaning of Section 832.7(a).

The district attorney's office and police department constitute a single prosecution team in any given criminal case, and the police department acts as the prosecutor's "agent" with respect to the retention of potential *Brady* material. (*Brown*, *supra*, 17 Cal.4th at pp. 879, 881.) For this reason, we determined above that an inspection of officer personnel files by a prosecutor would not constitute disclosure of the files within the criminal proceeding. Similarly, such an inspection would not breach the confidentiality of the files. The district attorney has the discretion to "initiate and conduct on behalf of the people all prosecutions for public offenses" (Gov. Code, § 26500), and information about important officer witnesses may be necessary to the informed exercise of that discretion. An inspection by the head of the prosecution team for *Brady* purposes would not involve any disclosure outside the prosecution team, much less public disclosure of information from the files. It would be consistent with the Legislature's intent to restrict discovery of the files, while preserving the prosecutor's ability to comply with its constitutional obligations. Our construction of the statute is also consistent with *Copley*, *supra*, 39 Cal.4th at page 1283, which held that the inclusion of the word "confidential" made peace officer personnel files privileged under the Public Records Act. Thus, our conclusion that designating the personnel files as "confidential" does not prohibit prosecutorial access for *Brady* purposes does not render the word meaningless. Finally, recognizing that prosecutors are not prohibited from accessing officer personnel files for *Brady* purposes is consistent with the apparent access prosecutors have to other confidential information, such as police investigation reports (*Rackauckas v. Superior Court* (2002) 104 Cal.App.4th 169, 174-177) and the identities of confidential informants (*People v. Hobbs* (1994) 7 Cal.4th 948, 957-964). As the head

of the prosecution team, the prosecutor has access to a range of materials otherwise considered to be confidential.[15]

This construction of the term "confidential" in Section 832.7(a) is also supported by a 1983 Attorney General opinion, the relevant reasoning of which was approved in *Fagan v. Superior Court* (2003) 111 Cal.App.4th 607, 617-618 (*Fagan*).[16] The Attorney General had been asked to consider "what restrictions are placed upon a district attorney in obtaining access to the personnel records of a police officer[.]" (66 Ops.Cal.Atty.Gen. 128 (1983) ("1983 Attorney General Opinion").) Applying an exception for investigations of officer conduct (see Part IV.C., *post*), the Attorney General concluded that "as long as the district attorney is duly investigating 'the conduct of police officers or a police agency' as specified in section 832.7, he need not first obtain a court order for access to the records in question." (66 Ops.Cal.Atty.Gen., *supra*, at p. 128.) In the course of reaching that conclusion, the Attorney General considered what it meant for the files to be confidential. The Attorney General noted that "the Legislature and the courts have generally allowed public access to government files relating to the conduct of official business but not to those files relating to the personal lives of individuals. [Citations.] The latter have been treated as 'confidential' so as to protect the right of privacy." (*Id*. at p. 129, fn. omitted.) "Confidential information," the Attorney General

---

[15] We hold only that such *Brady* reviews of officer personnel files do not breach the confidentiality of the files under Section 832.7(a). Our holding should not be construed to mean the prosecution has unlimited access to peace officer personnel files for other reasons, and we do not address whether other disclosures to other governmental entities for other purposes are permissible under Section 832.7(a). Furthermore, our decision does not prohibit a police department and district attorney from fashioning procedures to identify a pool of potential *Brady* materials for scrutiny by the prosecutor, much like a pool of such materials was identified for review by the trial court in the present case (see Part IV.F., *post*).

[16] " 'Opinions of the Attorney General, while not binding, are entitled to great weight. [Citations.] In the absence of controlling authority, these opinions are persuasive "since the Legislature is presumed to be cognizant of that construction of the statute." ' [Citations.]" (*California Assn. of Psychology Providers v. Rank* (1990) 51 Cal.3d 1, 17.) It can be presumed that, if an opinion " 'were a misstatement of the legislative intent, "some corrective measure would have been adopted." ' " (*Ibid.*)

observed, is " 'not publicly disseminated.' " (*Ibid.*, fn. 3.) The Attorney General further reasoned that disclosure to the district attorney would not compromise the confidentiality of the files. (*Id.* at p. 130.)

*Fagan* applied the same exception for investigations of officer conduct, and held a district attorney properly obtained the results of urinalysis tests contained in confidential peace officer personnel files in investigating off-duty criminal conduct by the officers. (*Fagan*, *supra*, 111 Cal.App.4th at pp. 610, 615.) As pertinent in the present case, the court further held that the district attorney's access to the tests did not mean that the tests were no longer confidential. (*Id.* at pp. 617-618.) After discussing the 1983 Attorney General Opinion, *Fagan* concluded that, while the district attorney properly accessed the test results, the district attorney was obligated "to maintain the non-public nature of the files absent judicial review of the relevance of the information" through a motion under Section 1043. (*Id.* at p. 618.)

For the above reasons, we conclude that an inspection of an investigatory agency's peace officer personnel files for *Brady* materials by the prosecutor would not constitute a breach of the confidentiality of the files under Section 832.7(a).

C.    *In the Alternative, the Exception for District Attorney Investigations of Officer Conduct is Applicable*

Appearing as amicus curiae in this proceeding, the Attorney General encourages this court to conclude the investigation exception applies to *Brady* review of officer personnel files. That exception, contained in the second sentence of Section 832.7(a) and referenced just above, provides, "This section shall not apply to investigations or proceedings concerning the conduct of peace officers or custodial officers, or an agency or department that employs those officers, conducted by a grand jury, a district attorney's office, or the Attorney General's office."[17] Petitioners contend the exception applies only

---

[17]    The investigation exception has been applied outside the *Brady* context. (*Fagan, supra,* 111 Cal.App.4th at p. 615 [the exception applied to an investigation of off-duty conduct by the officer-defendants]; *People v. Gwillim* (1990) 223 Cal.App.3d 1254, 1260, 1270 [under the exception, a district attorney investigating an allegation of sexual

23

"when the officer is a suspect in an investigation or target of a criminal prosecution for conduct that occurred while employed as an officer." We agree with the Attorney General and conclude that, even if prosecutorial access to officer personnel files for *Brady* purposes were deemed to be a disclosure in a criminal proceeding or breach of the confidentiality of the files, the investigation exception is applicable.

*People v. Superior Court (Gremminger)* (1997) 58 Cal.App.4th 397 (*Gremminger*), cited by petitioners, is not to the contrary. There, the defendant was a former police officer charged with murder; the prosecution subpoenaed the defendant's personnel records, which were delivered to the court. (*Id.* at pp. 400-401.) The trial court denied the prosecution's request for disclosure of the files, and *Gremminger* denied the prosecution's petition for writ of mandate, concluding the investigation exception did not apply. (*Id.* at p. 404.) *Gremminger* reasoned in part, "the People cannot reasonably contend that the district attorney seeks to review [the defendant's] . . . police officer personnel records in order to investigate his conduct as a police officer. Instead, the district attorney seeks disclosure of [the defendant's] records in order to prepare the prosecution's case against [the defendant], a private citizen." (*Id.* at p. 406.) *Gremminger* held, "where the People seek discovery of the peace officer personnel records of a criminal defendant who was not employed as a police officer at the time the crime was allegedly committed, the district attorney is not exempted under the provisions of [Section 832.7(a)], and must comply with the requirements of [Section 1043] et seq." (*Gremminger*, at p. 407.)

In contrast to *Gremminger*, when a prosecutor conducts a *Brady* review of an officer's personnel file, the prosecutor *is* investigating that officer's conduct to determine whether there is any evidence that could be used to impeach him or her at trial. Although in *Gremminger*, *Gwillim*, and *Fagan* the investigation exception was considered in circumstances where the officer was the target of a criminal investigation, none of the cases expressly excludes other types of investigations of officer conduct from the scope

assault by an officer could access a statement the officer-defendant provided during a police internal investigation].)

24

of the exception. Neither does Section 832.7(a) contain any such limiting language; it does not, for example, limit the application of the exception to investigations of the conduct of police officers who are *defendants or suspects*. (See Pipes & Gagen, *supra*, § 10:20.3.3, p. 966.)

If prosecutorial *Brady* review constitutes disclosure in a criminal proceeding or breach of the confidentiality of officer personnel files within the meaning of Section 832.7(a), then the investigation exception applies and permits such review.[18]

D.      Alford *Does Not Preclude Our Construction of Section 832.7(a)*

As noted in a footnote at the outset of this decision, in *Brandon* the California Supreme Court reserved the question "whether Penal Code section 832.7, which precludes disclosure of officer records 'except by discovery pursuant to Sections 1043 and 1046 of the Evidence Code,' would be constitutional if it were applied to defeat the right of the prosecutor to obtain access to officer personnel records in order to comply with *Brady*." (*Brandon*, *supra*, 29 Cal.4th at p. 12, fn. 2.)  Just six months later, the court stated in *Alford*, without elaboration, that "peace officer personnel records retain their confidentiality vis-à-vis the prosecution" absent compliance with Sections 1043 and 1045. (*Alford*, *supra*, 29 Cal.4th at p. 1046.)  The issues before our high court in *Alford* involved the prosecution's right to participate in a defense-initiated *Pitchess* motion and discover the information disclosed to the defendant.  *Alford* did not purport to consider whether the prosecution could access officer personnel files to comply with its *Brady*

---

[18]      The amicus brief filed by the Attorney General takes the position that the investigation exception can be "reasonably construed to authorize direct access of personnel records by a district attorney's office to satisfy the prosecutor's *Brady* obligation."  The Attorney General's brief does not directly address whether such a *Brady* review constitutes disclosure in a criminal proceeding or breach of the confidentiality of officer personnel files within the meaning of the first sentence of Section 832.7(a).  Nevertheless, the Attorney General generally supports the proposition that the Legislature would not have viewed prosecutorial access as a breach of confidentiality in stating, "the Legislature, aware that the prosecution is deemed to have constructive knowledge of the material exculpatory information in the files of the prosecution team that must be disclosed under *Brady* to the defendant for trial, could readily have concluded that there was no 'just claim to confidentiality' vis-à-vis the prosecution for such information."

25

disclosure obligations. We do not understand that brief passage in *Alford* to have resolved, without so acknowledging, the precise constitutional dilemma *Brandon* so carefully delineated and left open just months earlier. We therefore disagree with the decisions in *People v. Gutierrez* (2003) 112 Cal.App.4th 1463, 1474-1475 (*Gutierrez*), and *Abatti v. Superior Court* (2003) 112 Cal.App.4th 39, 56 (*Abatti*), to the extent they interpret *Alford* to hold that Section 832.7(a) prohibits the prosecution from accessing officer personnel files for *Brady* purposes. In any event, neither *Alford*, nor *Gutierrez*, nor *Abati* considered the particular issues of statutory interpretation addressed in the present case, and "it is axiomatic that cases are not authority for propositions not considered." (*People v. Alvarez* (2002) 27 Cal.4th 1161, 1176 (*Alvarez*).)

E.  *Petitioners' Interpretation of Section 832.7(a) Presents Avoidable Constitutional Questions*

In California, the scope of the *Brady* disclosure requirement has been described as follows: "A prosecutor's duty under *Brady* to disclose material exculpatory evidence applies to evidence the prosecutor, or the prosecution team, knowingly possesses or has the right to possess. The prosecution team includes both investigative and prosecutorial agencies and personnel. [Citations.] The prosecution must disclose evidence that is actually or constructively in its possession or accessible to it. [Citation.]" (*People v. Jordan* (2003) 108 Cal.App.4th 349, 358 (*Jordan*); see also *People v. Superior Court (Barrett)* (2000) 80 Cal.App.4th 1305, 1315 ["[t]he scope of the prosecutorial duty to disclose encompasses exculpatory evidence possessed by investigative agencies to which the prosecutor has reasonable access."].)

In *Gutierrez*, after concluding the prosecution could not access officer personnel files absent a motion under Section 1043, the court relied on *Jordan* in concluding that officer personnel files were outside the scope of the prosecution's *Brady* disclosure obligation. (*Gutierrez*, *supra*, 112 Cal.App.4th at pp. 1474-1475.) The court rejected the defendant's contention "that the prosecutor was obliged to conduct a review of the files of 'all significant police officer witnesses' and disclose any *Brady* material[.]" (*Ibid.*) *Gutierrez* reasoned, "Because under *Alford* the prosecutor does not generally have the

26

right to possess and does not have access to confidential peace officer files, Gutierrez's argument for routine review of the complete files of all police officer witnesses in a criminal proceeding necessarily fails." (*Id.* at p. 1475.) Under *Gutierrez's* reasoning, the prosecution arguably has no obligation under *Brady* to devise procedures to uncover exculpatory evidence in officer personnel files, because those materials are outside the *Brady* disclosure requirements. [19] But that conclusion, which rests on an overly-expansive reading of *Alford,* seems contrary to well established, federal constitutional law obligating the prosecution to learn of any evidence favorable to the defendant known to the police (*Kyles*, *supra*, 514 U.S. at p. 437), including impeachment evidence (*Salazar*, *supra*, 35 Cal.4th at p. 1042). (See also *Youngblood v. West Virginia, supra,* 547 U.S. at p. 870.) That is, impeachment evidence in officer personnel files cannot constitutionally be excluded from the prosecution's *Brady* disclosure obligations. (See Neri, *supra*, 43 McGeorge L. Rev. at p. 310 [asserting *Gutierrez* "violates the federal Supremacy Clause by redefining prosecutors' federal *Brady* duty to exclude peace-officer personnel files, and is an improper attempt to subordinate a federal constitutional right to state privacy interests" (italics added, fn. omitted)].) Thus, petitioner's interpretation of Section 832.7(a), which relies on *Gutierrez*, raises serious constitutional questions because it would interfere with the disclosure of exculpatory evidence in police files, contrary to *Brady* and its progeny.

Interpreting Section 832.7(a) to shift the *Brady* review from the prosecutor to the trial court raises additional constitutional concerns. The prosecutor is "in the best position to evaluate whether evidence must be disclosed because it is materially favorable to the defense." (*Villasana v. Wilhoit* (8th Cir. 2004) 368 F.3d 976, 979; see also *United States v. Holmes* (4th Cir. 1983) 722 F.2d 37, 41 [pointing out that the trial court "generally does not know the government's theory of the prosecution nor what possible

---

[19]    The People embrace this holding in *Gutierrez*, expressing dismay that, if Section 832.7(a) does not preclude prosecutorial access to personnel files for *Brady* purposes, "prosecutors will be duty bound . . . to examine the personnel files of every peace officer witness in every case to search for potential *Brady* material." We address that argument later in the decision. (See Part IV.F., *post*.)

27

defense might be available to defendants, and thus it is unlikely that it would recognize in a general in camera search anything but the most obviously exculpatory data"].)  The prosecutor is the only person with access to the entire landscape of evidence that will or could be presented against the defendant at trial.  At the pretrial stage, the trial court's knowledge of the details of the case is often very limited.  Although the significance of much impeachment evidence would likely be obvious to all, the import of other information might be clear to the prosecutor but not to the trial court.  This is particularly true because the *Brady* materiality standard looks at the "suppressed evidence considered collectively, not item by item."  (*Kyles*, *supra*, 514 U.S. at p. 436, fn. omitted.)  Therefore, "the prosecution, which alone can know what is undisclosed, must be assigned the consequent responsibility to gauge the likely net effect of all such evidence and make disclosure when the point of 'reasonable probability' is reached."  (*Id.* at p. 437.)  The trial court cannot analyze the cumulative impact of nondisclosure of a piece of exculpatory—but not itself material—evidence in an officer's personnel file.[20]

Thus, in addition to the reasons set out above for our construction of Section 832.7(a), the statutory interpretation principle of avoiding difficult constitutional questions provides additional support for our approach.  (*People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, 509; see also *In re Smith* (2008) 42 Cal.4th 1251, 1269 ["Our common practice is to 'construe[ ] statutes, when reasonable, to avoid difficult constitutional questions.'  [Citation.]"]; *People v. Smith* (1983) 34 Cal.3d 251, 259 ["if reasonably possible the courts must construe a statute to avoid doubts as to its constitutionality"].)

> F.      *Petitioners' Additional Arguments Regarding Section 832.7(a)*

Petitioners contend that interpreting Section 832.7(a) to permit the prosecutor to access officer personnel files would render superfluous the *Pitchess* procedures in

---

[20]      We are aware of no court that has approved routinely shifting the responsibility for performing the initial *Brady* review from the prosecution to the court.  That allocation of responsibility has long been a fundamental aspect of modern constitutional criminal procedure, and it is not to be altered lightly.

Sections 1043 and 1045.  However, a *Pitchess* motion may be initiated by a defendant, so a defendant can obtain any information from personnel files discoverable under the *Pitchess* scheme, regardless of whether the prosecutor concludes there is evidence that must be disclosed under *Brady*.  Moreover, *Brady* and *Pitchess* "employ different standards of materiality."  (*Brandon*, *supra*, 29 Cal.4th at p. 7.)  "Unlike the high court's constitutional materiality standard in *Brady*, which tests whether evidence is material to the fairness of trial, a defendant seeking *Pitchess* disclosure . . . need only show that the information sought is material 'to the subject matter involved in the pending litigation.' (§ 1043, subd. (b)(3).)  Because *Brady's* constitutional materiality standard is narrower than the *Pitchess* requirements, any citizen complaint that meets *Brady's* test of materiality necessarily meets the relevance standard for disclosure under *Pitchess*.  (§ 1045, subd. (b).)"  (*Brandon*, at p. 10; see also *id.* at p. 14.)  Thus, because certain information that would not be deemed material under *Brady* would be deemed material under *Pitchess*, the *Pitchess* scheme is not rendered superfluous by our interpretation of Section 832.7(a).  Moreover, despite petitioners' arguments to the contrary, permitting direct access to officer personnel files will not "nullif[y]" the protections of the *Pitchess* scheme, because we conclude prosecutors must use motions under Section 1043 to *disclose* the *Brady* materials they identify to the defense.  (See Part VII, *post*.)

Petitioners also contend the decision in *Fagan*, *supra*, 111 Cal.App.4th 607 supports their position that Section 832.7(a) prohibits the district attorney from accessing officer personnel files for *Brady* purposes absent a motion under Section 1043.  *Fagan* held the district attorney in that case properly obtained the results of the officer-defendants' urinalysis tests from personnel files under the Section 832.7(a) investigation exception.  (*Fagan*, at p. 610.)  *Fagan* further held the results could not "be publicly disclosed or disseminated absent compliance with [Section 1043], including a judicial determination of their admissibility [citation], relevancy [citations], and the need for a protective order [citation]."  (*Fagan*, at p. 610.)  In the course of its analysis, *Fagan* did state, "Where the exception afforded the district attorney by [Section 832.7(a)] is inapplicable, he must proceed according to the provisions of [Section 1043]."  (*Fagan*, at

29

p. 618.)  However, because *Fagan* did not consider whether prosecutorial review for *Brady* purposes would, under Section 832.7(a), constitute disclosure in a criminal proceeding or breach the confidentiality of the officer personnel files, that statement is not properly treated as contrary authority; the same reasoning applies to similar language in *Gremminger*, *supra*, 58 Cal.App.4th at page 407.  (*Alvarez*, *supra*, 27 Cal.4th at p. 1176.)

Notably, *Fagan* supports the distinction we make between prosecutorial access to a personnel file to *identify Brady* material and *public disclosure* of that material:  "The exception contained in section 832.7(a) affords the prosecution the ability to review confidential peace officer personnel files when investigating police misconduct without notice to the individuals involved.  At the same time, it requires the district attorney to maintain the nonpublic nature of the files absent judicial review of the relevance of the information to a criminal or civil action."  (*Fagan*, *supra*, 111 Cal.App.4th at p. 618.)  Similarly, our construction of Section 832.7(a) affords the prosecution the ability to review confidential peace officer personnel files in order to comply with its obligation to identify *Brady* material in the possession of the prosecution team.  And we further hold the District Attorney is required to maintain the nonpublic nature of the files and seek judicial review prior to any disclosure to the defendant through a motion under Section 1043. (See Part VII, *post.*)

Citing *Fagan*, the People argue it would not save judicial resources to require the prosecution to perform the initial *Brady* review, because "the [trial] court will still be required to review the same records itself before ordering disclosure to the defense, causing it the exact burden it sought to avoid in the initial in camera review."  (Bolding & italics omitted.)  However, that presupposes prosecutors will conclude that all of the potential *Brady* materials identified by the police department should be disclosed in all cases, which seems unlikely.[21]  In any event, our decision that the prosecutor must

---

[21]     Defendant Johnson argues that the standard for pretrial disclosure is not the *Brady* materiality standard, because Penal Code section 1054.1, subdivision (e) "requires the prosecution to disclose '[a]ny exculpatory evidence,' not just material exculpatory

perform the initial materiality review is based not on the burdens such review would impose on the trial court. Instead, our decision is based on the fundamental constitutional proposition that the *Brady* disclosure requirement is the prosecution's obligation and our conclusion that Section 832.7(a) does not preclude prosecutorial access for *Brady* review.

Finally, petitioners suggest a system that gives the prosecution access to officer personnel files for *Brady* purposes would be problematic and impractical. For example, the District Attorney argues, "while the . . . system of maintaining a *Brady* alert list permits the files of only those officers whom [the SF Police Department] believes to have potential *Brady* [material] to be subject to court review," an "open file policy would require every prosecutor in any trial at any time to examine personal personnel records to look for more recent potential *Brady* material." The People also assert that "prosecutors will be duty bound . . . to examine the personnel files of every peace officer witness in every case to search for potential *Brady* material."

However, our decision does not prohibit police departments and district attorneys from designing orderly procedures to identify and provide materials for *Brady* review by prosecutors. *Brady* imposes the disclosure obligation on the prosecution, but it allows some flexibility in how the prosecution complies with that obligation. As a decision of this District recently explained, "District attorneys need some mechanism for ensuring that they learn of *Brady* material within their constructive possession. [Citation.] But the choice of that mechanism is within district attorneys' broad 'discretionary powers in the initiation and conduct of criminal proceedings'. . . . [Citation.]" (*People v. Rose* (2014) 226 Cal.App.4th 996, 1006 (*Rose*).) Indeed, it may be that the current procedures used to identify materials requiring a *Brady* materiality determination could continue to be

_____

evidence." (*Barnett v. Superior Court* (2010) 50 Cal.4th 890, 901.) That section of the Penal Code "illustrates the difference between being entitled to relief for a *Brady* violation and being entitled merely to receive the evidence." (*Barnett*, at p. 901.) Johnson argues the prosecution will be obligated to disclose any evidence from officer personnel files that meets that statutory standard for disclosure. The Penal Code section 1054.1, subdivision (e) disclosure requirements are not at issue in this writ proceeding, and nothing in this opinion is intended to address the scope of the prosecution's obligations under that statute.

employed, with the prosecutor performing the review rather than the trial court. Of course, as always, the prosecution bears the risk of reversal if the adopted procedures are inadequate and *Brady* material is not disclosed. (*Rose*, at p. 1007.) In any event, because *Brady* requires that exculpatory evidence within officer personnel files be disclosed, petitioners' position would not result in any fewer files being reviewed; it would simply result in those files being reviewed by the court.

V.    *The Federal Cases Cited by Petitioners Do Not Support the Requested Shift in Responsibility for Performing Initial* Brady *Reviews*

As discussed above, petitioners seek to routinely shift responsibility for performing the initial *Brady* materiality review of officer personnel files from the prosecutor to the trial court. None of the cases cited by petitioners supports such a routine shift of the *Brady* obligation to trial courts.

A.    *The* Ritchie *Decision*

In *Pennsylvania v. Ritchie* (1987) 480 U.S. 39 (*Ritchie*), the defendant, charged with molesting his daughter, served a subpoena seeking disclosure of confidential reports prepared by the child protective services agency that investigated the charges. (*Id*. at p. 43.) The agency refused to comply with the subpoena on the basis the records were privileged under state law. (*Ibid.*) As described in *Ritchie*, the applicable statute provided that child abuse reports " ' shall be confidential and shall only be made available to' " specified entities, including " '[a] court of competent jurisdiction pursuant to a court order.' " (*Id.* at p. 44, fn. 2.) The Pennsylvania Supreme Court held the defendant's attorney was entitled to review the files for relevant evidence. (*Id.* at p. 46.)

The United States Supreme Court reversed. The court rejected the prosecution's argument that the reports were not subject to disclosure even if they were material within the meaning of *Brady*. (*Ritchie*, *supra*, 480 U.S. at p. 57.) *Ritchie* reasoned that state law permitted disclosure pursuant to a court order, and, therefore, the reports could be disclosed "when a court of competent jurisdiction determines that the information is 'material' to the defense of the accused." (*Id.* at p. 58.) The court held the defendant "is entitled to have the [protective services agency] file reviewed by the trial court to

32

determine whether it contains information that probably would have changed the outcome of his trial. If it does, he must be given a new trial." (*Ibid.*) However, *Ritchie* cautioned that the defendant could not "require the trial court to search through the [agency's] file without first establishing a basis for his claim that it contains material evidence." (*Id.* at p. 58, fn. 15; see also *Brandon*, *supra*, 29 Cal.4th at p. 15.) The court also held the defendant's "right to discover exculpatory evidence" under *Brady* did not require that *his* counsel be permitted to search through the protective services agency's files. (*Id.* at p. 59.)

Petitioner SF Police Department asserts *Ritchie* stands for the proposition that courts may be "enlisted to use in camera review to strike the careful balance between a defendant's access to *Brady* evidence and state law protections for privacy or confidentiality." However, *Ritchie* emphasized that, absent a specific request from the defendant, initial *Brady* materiality reviews are performed by the prosecution alone. (*Ritchie*, *supra*, 480 U.S. at p. 60.) Thus, the court explained, "In the typical case where a defendant makes only a general request for exculpatory material under [*Brady*], it is the State that decides which information must be disclosed. Unless defense counsel becomes aware that other exculpatory evidence was withheld and brings it to the court's attention, the prosecutor's decision on disclosure is final." (*Ritchie*, at p. 59, fn. omitted.) It appears *Ritchie's* decision to remand for in camera review by the trial court was due to the fact that the *defendant* had made a motion requesting *specific* exculpatory evidence that he had reason to believe existed, thus making the case unlike the "typical case[.]" (*Ibid.*)

As pertinent to the present case, we understand *Ritchie* to support *at most* only the proposition that it may be appropriate for a court to conduct in camera *Brady* review of confidential files for specific exculpatory evidence requested by a defendant. This is the understanding adopted by *Brooks, supra,* 966 F.2d 1500, which concluded that, under *Ritchie*, "prosecutorial review of possible *Brady* materials" is "normally sufficient," and in camera review is reserved "for cases where the defense had become 'aware that . . . exculpatory evidence was withheld', [citations]." (*Brooks*, at p. 1505; see also *U.S. v.*

33

*Caro-Muniz* (1st Cir. 2005) 406 F.3d 22, 30 ["When a defendant fails to present a narrowly tailored and specific request, *Brady* places the burden of disclosing evidence favorable to the defendant on the government, not on the court."].) *U.S. v. Prochilo* (1st Cir. 2011) 629 F.3d 264, 268, adopted the same understanding of *Ritchie*, summarizing the rule as follows: "The government is primarily responsible for deciding what evidence it must disclose to the defendant under *Brady*. [Citation.] And at least where a defendant has made only a general request for *Brady* material, the government's decision about disclosure is ordinarily final—unless it emerges later that exculpatory evidence was not disclosed. [Citation.] When the defendant seeks access to specific materials that the government maintains are not discoverable under *Brady*, however, a trial court may in some instances conduct an *in camera* review of the disputed materials. [Citations.] To justify such a review, the defendant must make some showing that the materials in question could contain favorable, material evidence. [Citations.]."

Accordingly, nothing in *Ritchie* suggests that, merely because information is of a sensitive nature, the *prosecution* may compel a trial court to conduct the review for *Brady* materials in the first instance, particularly where the prosecution may access those files and conduct its own review for *Brady* materials. In other words, *Ritchie* is a case regarding a defendant's motion to obtain discovery of specific, identified potential *Brady* materials; it is not a case about procedures for the prosecution to comply with its own *Brady* obligations.

B.    *Petitioner's Additional Federal Cases*

Petitioners cite a handful of federal cases, which the District Attorney asserts demonstrate that "[n]umerous courts, including the United States Supreme Court, have also recognized that an *in camera* hearing is the appropriate vehicle to review documents for *Brady* material." As the court in *Application of Storer Communications, Inc.* (6th Cir. 1987) 828 F.2d 330 (*Storer*), explained, "Several courts of appeals have approved the practice of prosecutors submitting possible *Brady* materials *in camera* to the trial court in order to obtain a pretrial determination of whether disclosure is required. [Citations.]" (*Storer*, at p. 334, citing *United States v. Tucker* (7th Cir.1985) 773 F.2d 136, 141; *United*

*States v. Dupuy* (9th Cir.1985) 760 F.2d 1492, 1501 (*Dupuy*); and *United States v. Holmes, supra,* 722 F.2d at p. 41.) Similarly, in *United States v. Agurs* (1976) 427 U.S. 97 (*Agurs*), the United States Supreme Court stated in passing, "Although there is, of course, no duty to provide defense counsel with unlimited discovery of everything known by the prosecutor, if the subject matter of such a request is material, or indeed if a substantial basis for claiming materiality exists, it is reasonable to require the prosecutor to respond either by furnishing the information *or by submitting the problem to the trial judge.*" (*Agurs*, at p. 106, italics added.)

Petitioners' federal decisions do not support their request for an initial judicial *Brady* materiality review. Some of the cases involve defendant-initiated requests for particular exculpatory evidence (*U.S. v. Kiszewski* (2d Cir. 1989) 877 F.2d 210; *U.S. v. Phillips* (7th Cir. 1988) 854 F.2d 273),[22] which, as explained previously, is not the same as a scheme under which the prosecution routinely submits potential *Brady* materials for trial court review. Other cases have suggested that court review is particularly appropriate where confidentiality issues are involved. For example, in *Dupuy, supra,* 760 F.2d at page 1501, the prosecutor took notes of separate plea negotiations with two co-defendants. The prosecutor promised the negotiations would remain confidential, but she subsequently decided the notes contained potential *Brady* material. (*Dupuy*, at p. 1501.) She submitted the issue to the trial court, which *Dupuy* stated "satisfied her duty to disclose exculpatory material." (*Ibid.*; but see *id.* at p. 1504, Ferguson, J., concurring ["The constitutional duty to disclose articulated in [*Brady*], however, never shifts from the prosecution to the court."].) *Dupuy* proceeded to hold the trial court erred in failing to conduct an in camera review of the notes. (*Id.* at p. 1502.) *Dupuy* commented, "[c]onsultation with the judge is particularly appropriate when the Government has legitimate reasons for protecting the confidentiality of the material requested, for the trial judge can then weigh the Government's need for confidentiality against the defendant's

---

[22] *Brooks*, *supra*, 966 F.2d 1500, described *Kiszewski* as a case in which in camera review was justified because "the defense had become 'aware that . . . exculpatory evidence was withheld', [citations]." (*Brooks*, at p. 1505.)

need to use the material in order to obtain a fair trial." (*Id.* at p. 1501; see also *Phillips* at p. 278.)[23]

However, that there may be some role for the trial court in assisting prosecutors to make difficult determinations about the materiality of specific items of evidence, particularly where there are confidentiality concerns, does not mean prosecutors may obligate the trial court to perform an extensive initial *Brady* review, as opposed to reviewing particular documents identified by the prosecutor. One of the cases petitioners cite, *Holmes*, *supra*, 722 F.2d 37, clarified the responsibility for performing an initial *Brady* review remained with the prosecution, noting: "We add, however, that we think that the district court was correct in ruling that it had no obligation to conduct a general *Brady*-rule in camera search through the files of the prosecutor when the prosecutor had assured the district court that all possibly exculpatory material had been produced. Of course it would be the prosecutor's obligation to submit any material to the district court in camera if he had any doubts about whether it might be exculpatory. The district court, however, generally does not know the government's theory of the prosecution nor what possible defense might be available to defendants, and thus it is unlikely that it would recognize in a general in camera search anything but the most obviously exculpatory data." (*Holmes*, at p. 41.)

VI.  *The Other California Cases Cited by Petitioners Do Not Support the Requested Shift in Responsibility for Performing Initial* Brady *Reviews*

A.    J.E. v. Superior Court

The recent decision in *J.E. v. Superior Court* (2014) 223 Cal.App.4th 1329, is a California case involving a *Ritchie*-type request by a defendant (in *J.E.*, a juvenile) for

---

[23]    It is unclear what confidentiality interest could justify the withholding of evidence that meets *Brady's* materiality standard, but that is an issue we need not resolve in the present case. As Judge Ferguson explained in his concurrence in *Dupuy*, "the *Brady* decision has already identified where the Fifth Amendment has struck the balance between the suppression or disclosure of material exculpatory information requested by the defendant. *Brady* teaches that a trial in which the prosecution withholds material exculpatory information . . . is not a fair trial." (*Dupuy*, *supra*, 760 F.2d at p. 1504, Ferguson, J., concurring.)

disclosure of specific, potentially exculpatory evidence. In *J.E.*, a minor who was the subject of delinquency proceedings requested that the juvenile court conduct an in camera inspection of a prosecution witness's juvenile dependency file for *Brady* material. (*J.E.*, at p. 1332.) J.E.'s counsel "offered to provide specific information supporting the request 'off the record or under seal.' " (*Id.* at p. 1333.) The request was made pursuant to Welfare and Institutions Code section 827, which allows a juvenile court to release information from juvenile files. The juvenile court refused, ruling the prosecutor should undertake the *Brady* review. (*J.E.*, at p. 1332.) Thereafter, the prosecutor reviewed the records and informed the minor's counsel there was no *Brady* material. (*J.E.*, at pp. 1333-1334.)[24] The minor's counsel renewed her request that the juvenile court conduct a *Brady* review, and the court again refused. (*J.E.*, at p. 1334.) Citing *Ritchie*, the *J.E.* court issued a writ of mandate directing the juvenile court to conduct the requested *Brady* review "upon a showing there is a reasonable basis to believe exculpatory or impeachment evidence exists in" the juvenile records at issue. (*J.E.*, at p. 1339.)

J.E. stated that procedure made "practical sense" because it "eliminates the need for the prosecution to request court permission for disclosure after its *Brady* review, and forestalls litigation brought by the defense over whether the prosecution has complied with its *Brady* obligations." (*J.E.*, *supra*, 223 Cal.App.4th at p. 1339.) Nevertheless, *J.E.*, like *Ritchie* and unlike the present case, involved a request by a defendant (or juvenile) for judicial *Brady* review for specific exculpatory evidence.[25] Although *J.E.* held that a juvenile is entitled to judicial *Brady* review "upon a showing there is a

---

[24] The statutory scheme authorized the prosecutor to access juvenile records (Welf. & Inst. Code, § 827, subd. (a)(1)(B)), but prohibited the prosecutor from disclosing the information to an unauthorized person without a court order. (Welf. & Inst. Code, § 827, subd. (a)(4), (5); *J.E.*, *supra*, 223 Cal.App.4th at p. 1337.)

[25] In the present case, Johnson filed a separate motion for *Brady* material, but petitioners do not argue Johnson sought specific exculpatory evidence the prosecution had failed to disclose. We need not and do not address in the present case what showing a defendant would be required to make in order to obtain judicial *Brady* review of files in the possession of the prosecution team. (See *J.E.*, *supra*, 223 Cal.App.4th at pp. 1333, 1339 [adopting "reasonable basis" test for such a request in the context of juvenile records].)

37

reasonable basis to believe exculpatory or impeachment evidence exists in" the files (*J.E.,* at p. 1339), *J.E.* did not suggest the prosecutor could compel the juvenile court to perform the initial *Brady* review. Instead, absent such a request from the juvenile, the prosecutor "request[s] court permission for disclosure after its *Brady* review." (*Ibid.*) Although "policy and practical considerations" (*id.* at p. 1334) may have provided a justification for the judicial *Brady* review in that case, it did not, unlike our case, involve any shifting of the prosecutor's constitutional obligation to identify materials for disclosure under *Brady*. Because in any given case the prosecutor is in a better position to perform the *Brady* materiality review than the trial court (see Part IV.E., *ante*), we do not believe that considerations of policy and pragmatism are a sufficient basis to support the shift in responsibility requested by petitioners, especially because reasonable policy arguments can be made in favor of both approaches.

B.    *Other California Cases*

The California Supreme Court in *Brandon* held that a trial court that conducts an in camera review of officer personnel files pursuant to a defendant's motion under Section 1043 may order the disclosure of material in the files that is discoverable under *Brady* but not under *Pitchess*. (*Brandon*, *supra*, 29 Cal.4th at p. 15.) In that case, the information at issue was a 10-year old citizen complaint against an officer. (*Ibid.*) *Brandon* held the court "did not act improperly in evaluating" the complaint, but cautioned, "[w]e do not suggest that trial courts must routinely review information that is contained in peace officer personnel files and is more than five years old to ascertain whether *Brady*, *supra*, 373 U.S. 83, requires its disclosure." (*Brandon*, at p. 15, fn. 3.) *Brandon* did not suggest the prosecution could require the trial court to undertake an initial *Brady* materiality review under Sections 1043 and 1045.

Petitioners are also mistaken in suggesting the California Supreme Court's decision in *People v. Hammon* (1997) 15 Cal.4th 1117 supports the requested judicial *Brady* review. In *Hammon*, the Supreme Court held the trial court properly quashed a subpoena duces tecum the defendant served on the victim's psychotherapists, without first conducting an in camera review of the material. (*Hammon*, at p. 1119.) The court

38

held "the trial court was not required, at the pretrial stage of the proceedings, to review or grant discovery of privileged information in the hands of third party psychotherapy providers." (*Ibid.*) *Hammon* also rejected the defendant's claim the information he sought was "in the government's possession within the meaning of" *Ritchie* and *Brady*. (*Hammon*, at p. 1125, fn. 3.) In essence, *Hammon* is a case about a defendant's request for pretrial discovery from a third party; the decision includes no broad pronouncements about the role of the trial court in the *Brady* review or disclosure process.

None of petitioners' other cases compel this court to rule in favor of the judicial *Brady* review petitioners seek. As we explained previously, we disagree with *Gutierrez*, *supra*, 112 Cal.App.4th 1463, and *Abatti*, *supra*, 112 Cal.App.4th 39, to the extent they conclude Section 832.7(a) precludes prosecutorial access to officer personnel files for *Brady* purposes.[26] Neither *Garden Grove Police Department v. Superior Court* (2001) 89 Cal.App.4th 430, 433-435 (*Garden Grove*) nor *Eulloqui v. Superior Court* (2010) 181 Cal.App.4th 1055, 1068 (*Eulloqui*) holds that Section 832.7(a) precludes prosecutorial access to officer personnel files, or that prosecutors may shift to the trial court the responsibility for identifying *Brady* materials in such files. *Garden Grove* supports a conclusion that Section 1043 should be used to obtain *disclosure* to the defense of *Brady* materials in officer personnel files, which is the issue to which we now turn.[27]

---

[26] We also disagree with *Gutierrez's* assertion that, "if a defendant meets the good cause requirement for *Pitchess* discovery, any *Brady* material in an officer's file will necessarily be included." (*Gutierrez*, at p. 1474.) *Gutierrez* fails to consider certain respects in which *Pitchess* discovery of officer personnel files is narrower than *Brady* discovery. (See Neri, *supra*, 43 McGeorge L. Rev. at pp. 312-314.) For example, *Pitchess* discovery does not encompass "complaints concerning conduct occurring more than five years before" the events underlying the criminal case (§ 1045(b)(1)), while *Brady* discovery is not so time limited. (*Brandon*, *supra*, 29 Cal.4th at p. 14.) Furthermore, under *Pitchess* courts have generally required only the disclosure of "the name, address and phone number of any prior complainants and witnesses and the dates of the incidents in question." (*City of Santa Cruz*, *supra*, 49 Cal.3d at p. 84.) The *Brady* disclosure obligation has no such limitation.

[27] In *People v. Davis* (2014) 226 Cal.App.4th 1353, 1361, the trial court granted the prosecutor's postjudgment motion under Sections 1043 and 1045 for in camera *Brady*

VII. *The Prosecution Must File a Motion Under Section 1043 To Disclose* Brady
*Material in Officer Personnel Files to a Defendant*

Having decided that Section 832.7(a) does not prevent the prosecutor from complying with its constitutional obligation to *identify Brady* material in officer personnel files, we address the second issue: is the prosecution permitted to *disclose* the *Brady* material without seeking permission from the trial court, or must the prosecution file a motion under Section 1043 to obtain court authorization for the disclosure to the defense? In its order, the trial court concluded flatly that "Evidence Code § 1043 *et seq.* does not apply to *Brady*." (Bolding omitted.) The court directed the SF Police Department to give the District Attorney access to the relevant officer personnel files, and indicated a willingness to conduct an in camera review only "[i]f a close question nonetheless remains as to whether information in a specific document or documents should be disclosed under *Brady*[.]"[28] On the other hand, the petitioners argue that disclosure of information from personnel files may only be made through a motion under Section 1043.

The plain language of Section 832.7(a) and Section 1043 compels the conclusion that any disclosure to the defendant must be pursuant to a motion under Section 1043. The relevant language in Section 832.7(a) is that peace officer personnel records "shall not be disclosed in any criminal or civil proceeding except by discovery pursuant to Sections 1043 and 1046 of the Evidence Code."[29] No party suggests any reasonable construction of that language under which disclosure of *Brady* material from a personnel file to a criminal defendant is not a disclosure of personnel records in a criminal

review of a police officer's personnel file. However, the issue in the case was whether the defendant could appeal from the trial court's determination there were no *Brady* materials in the file (*id.* at p. 1365); the propriety of the prosecutor's motion was not at issue.

[28] The superior court's return appears to take the same position. The return several times identifies the issue narrowly as whether Sections 1043 and 1045 mandate the court "to search through police officer files for '*Brady* materials.' " But elsewhere it asserts more broadly that "the procedures of [Sections 1043 and 1045] do not apply to a motion made under *Brady*."

[29] Evidence Code section 1046 is not applicable. (See page 9, fn. 10, *ante*.)

40

proceeding. The relevant language in Section 1043, subdivision (a) (Section 1043(a)) requires a motion under the section "[i]n any case in which discovery or disclosure is sought of peace or custodial officer personnel records or records maintained pursuant to Section 832.5 of the Penal Code or information from those records[.]" Again, no party suggests any reasonable construction of that language under which disclosure of *Brady* material from an officer personnel file to a criminal defendant is not a disclosure within the scope of Section 1043(a). Accordingly, the relevant language in Section 832.7(a) and Section 1043(a) is *not* ambiguous, and "its plain meaning controls." (*Los Angeles County Metropolitan Transportation Authority v. Alameda Produce Market, LLC* (2011) 52 Cal.4th 1100, 1107.)

We recognize, of course, that " ' "language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend." ' " (*People v. Ledesma* (1997) 16 Cal.4th 90, 95.) We also recognize that Section 1043 is in some ways an awkward fit with a motion to disclose *Brady* material. For example, Section 1043, subdivision (b)(3) requires the movant to provide an affidavit "showing good cause for the discovery or disclosure sought, setting forth the materiality thereof to the subject matter involved in the pending litigation and stating upon reasonable belief that the governmental agency identified has the records or information from the records." That standard of materiality—materiality "to the subject matter involved in the pending litigation"—is broader than the *Brady* standard. The "narrower" *Brady* standard tests "whether evidence is material to the fairness of trial[.]" (*Brandon*, *supra*, 29 Cal.4th at p. 10.) Nevertheless, we do not read that language as requiring the trial court to use the *Pitchess* materiality standard in resolving a motion for disclosure of *Brady* materials; the *Brady* materiality standard would apply in establishing "good cause."

Another provision that fits imperfectly with *Brady* disclosure is to be found in Section 1045. As noted previously, Section 1043 operates in conjunction with Section 1045: Section 1043 is "only the *first* hurdle in the discovery process," and Section 1043's "relatively low" discovery threshold is "offset" by the "protective provisions" in

41

Section 1045. (*City of Santa Cruz, supra*, 49 Cal.3d at p. 83.) Section 1045, subdivision (b)(1) requires the trial court to exclude from disclosure records concerning conduct occurring more than five years before the events underlying the criminal case. In contrast, *Brady* does not exempt conduct older than five years from its disclosure obligations. (*Brandon, supra*, 29 Cal.4th at pp. 14-15.) Nevertheless, *Brandon* concluded the provision was not "an absolute bar to disclosure" of older *Brady* materials. (*Brandon*, at p. 13.) There, the court held that a trial court considering a defendant's Section 1043 discovery motion could order disclosure of a ten-year-old record of police misconduct that is material under *Brady*, despite Section 1045, subdivision (b)(1). (*Brandon*, at pp. 13-15.) In reaching that conclusion, *Brandon* expressed agreement with the Attorney General's contention that "the ' "*Pitchess* process" operates in parallel with *Brady* and does not prohibit the disclosure of *Brady* information.' " (*Brandon*, at p. 14; see also *Gutierrez, supra*, 112 Cal.App.4th at pp. 1473-1474; *Abatti, supra*, 112 Cal.App.4th at p. 43; *Garden Grove, supra*, 89 Cal.App.4th at pp. 434-435.)

Other provisions in the *Pitchess* scheme that are protective of officer privacy are consistent with a motion for disclosure of *Brady* material. Section 1043(a) requires that the officer whose records are sought receive notice of the motion for disclosure. (See also *Abatti, supra*, 112 Cal.App.4th at p. 56.) Furthermore, Section 1045 contains provisions for optional and mandatory protective orders. Thus, Section 1045, subdivision (d) authorizes the court, upon motion, to "make any order which justice requires to protect the officer or agency from unnecessary annoyance, embarrassment or oppression."[30] And Section 1045, subdivision (e) *requires* the trial court to "order that the records disclosed or discovered may not be used for any purpose other than a court

---

[30] Section 1045, subdivision (d) provides in full: "Upon motion seasonably made by the governmental agency which has custody or control of the records to be examined or by the officer whose records are sought, and upon good cause showing the necessity thereof, the court may make any order which justice requires to protect the officer or agency from unnecessary annoyance, embarrassment or oppression."

proceeding pursuant to applicable law."[31]  (See also *Alford*, *supra*, 29 Cal.4th at pp. 1039-1043.)  These provisions provide added protection for officer privacy by regulating the use and further disclosure of materials disclosed pursuant to a Section 1043 motion. In particular, Section 1045, subdivision (e)'s *mandatory* protective order "carefully balances peace officers' privacy interests in their personnel records against defendants' rights of access to information relevant to their defense[.]"  (*Alford*, at p. 1042.)

We conclude that, despite the awkward fit between some language in Sections 1043 and 1045 and a request for disclosure of *Brady* materials, giving effect to the plain statutory language requiring a Section 1043 motion to obtain disclosure of information from officer personnel files in a criminal proceeding does not produce an absurd result contrary to Legislative intent.  (*People v. Ledesma*, *supra*, 16 Cal.4th at p. 95.)  As explained previously (Part IV.B., *ante*), the Legislature's intent in enacting the statutory *Pitchess* procedures was to protect officer personnel files from public disclosure, and to specify a procedure for discovery of information in such files.  (See *San Francisco Police Officers' Assn. v. Superior Court*, *supra*, 202 Cal.App.3d at pp. 189-190.)  Although there is no indication the Legislature specifically had in mind disclosures required under *Brady*, extending the privacy protections provided in Section 1043 and Section 1045 to *Brady* disclosure is wholly consistent with the Legislature's intent.[32]

Our conclusion that the prosecution must file a motion under Section 1043 to disclose to the defendant the *Brady* materials it has identified should not be construed to mean that it would be proper for a trial court to decline to disclose materials that must be

---

[31]    Section 1045, subdivision (e) provides in full: "The court shall, in any case or proceeding permitting the disclosure or discovery of any peace or custodial officer records requested pursuant to Section 1043, order that the records disclosed or discovered may not be used for any purpose other than a court proceeding pursuant to applicable law."

[32]    In *Alford*, the California Supreme Court concluded the prosecution did not have a right to receive *Pitchess* materials disclosed pursuant to a defendant's *Pitchess* motion. (*Alford*, *supra*, 29 Cal.4th at p. 1046.)  *Alford* did not, however, preclude the possibility that a party could file a Section 1043 motion for disclosure of materials from personnel files to *all* parties in the case.  Neither does the language of Section 1043 preclude such a motion.

disclosed under *Brady* in reliance on limitations on disclosure in Sections 1043 or 1045. As explained previously, under *Brandon*, *supra*, 29 Cal.4th at pages 13-15, the five-year limitation on *Pitchess* disclosure does not preclude broader *Brady* disclosure. *Eulloqui*, *supra*, 181 Cal.App.4th at page 1065, construed *Brandon* to support the broader proposition that "if materiality under the more stringent *Brady* standard is shown, the statutory restrictions pertaining to the *Pitchess* procedure are inapplicable [citation]; but if the defendant only shows materiality under the less stringent *Pitchess* standard, the statutory limitations apply [citation]." We agree.

The Supreme Court has also characterized Sections 1043 and 1045 as guaranteeing "a *balancing* of the officer's privacy interests against the defendant's need for disclosure." (*City of Santa Cruz*, *supra*, 49 Cal.3d at p. 84, italics added; accord *Alford*, *supra*, 29 Cal.4th at p. 1039.) The disclosure of *Pitchess* materials may involve such a balancing, but we are aware of no authority that exculpatory material in officer personnel files subject to disclosure under *Brady's* federal constitutional requirements may be exempted from disclosure due to privacy considerations. (See *Dupuy*, *supra*, 760 F.2d at p. 1504, Ferguson, J., concurring.) For example, in *Ritchie*, *supra*, 480 U.S. at page 58, the United States Supreme Court held, despite the conditional privilege accorded child abuse reports, the defendant was entitled to receive any information that met the *Brady* materiality standard; the court did not suggest there was any need to balance the defendant's need for the information with the privacy interests involved. Accordingly, in the *Brady* context, the main practical consequence of requiring a Section 1043 motion for disclosure appears to be the provision of notice to the impacted officers and an opportunity for the issuance of appropriate protective orders. The disclosure determination does not itself require a balancing of officer privacy interests.[33]

---

[33] Because we do not construe Sections 1043 or 1045 as precluding disclosure of evidence that meets *Brady's* materiality standard, we need not address whether the Legislature could constitutionally prohibit disclosure of such material based on considerations such as privacy. (*People v. Superior Court* (*Romero*), *supra*, 13 Cal.4th at p. 509; *In re Smith*, *supra*, 42 Cal.4th at p. 1269.)

In sum, although the prosecution has the obligation to identify evidence in officer personnel files that meets the *Brady* materiality standard, a motion under Section 1043 is required to disclose the *Brady* material to the defendant.[34]

VIII. *Conclusion*

The trial court did not err in refusing to undertake a *Brady* review of the materials identified by the SF Police Department, where the prosecution had not undertaken such a review and identified for the court the documents it believed met *Brady's* materiality standard. Section 832.7(a) does not preclude prosecutorial access for *Brady* review, and *Brady* and its progeny allocate responsibility for compliance on the prosecution. As emphasized by our high court in *Brown*, *supra*, 17 Cal.4th at page 883, "Although rigorous, we do not perceive the duty imposed by *Brady* as too onerous. [Citation.] 'Obviously some burden is placed on the shoulders of the prosecutor when he is required to be responsible for those persons who are directly assisting him in bringing an accused to justice. But this burden is the essence of due process of law. It is the State that tries a man, and it is the State that must insure that the trial is fair.' [Ciation.] This obligation serves 'to justify trust in the prosecutor as "the representative . . . of a sovereignty . . . whose interest . . . in a criminal prosecution is not that it shall win a case, but that justice shall be done." ' [Citations.] It also tends 'to preserve the criminal trial, as distinct from the prosecutor's private deliberations [or some other agency's independent assessment of materiality], as the chosen forum for ascertaining the truth about criminal accusations. [Citations.]' [Citations.]" We do not decide that the prosecution must conduct a review of the personnel file of every officer witness. And, as noted previously, we do not preclude the District Attorney and the SF Police Department from devising their own

----

[34] Petitioners devote a substantial portion of their briefing in this writ proceeding to the contention that the trial court imposed the wrong "good cause" standard for obtaining in camera review under Section 1043. We need not reach that issue, because the trial court correctly determined Section 832.7(a) did not bar prosecution access to the personnel files for *Brady* purposes. That initial prosecutorial review may render immaterial any future dispute regarding the good cause standard, because the prosecution, having seen the documents it seeks to disclose, should be able to make the required showing regardless of the standard.

procedures for *Brady* compliance, including a process similar to the current process, but with the prosecutor utilizing the pool of documents selected by the SF Police Department to identify *Brady* materials. (See *Rose*, *supra*, 226 Cal.App.4th at pp. 1006-1007.) Of course, regardless of the procedure devised, the prosecutor remains ultimately responsible for complying with *Brady*. (*Rose*, at p. 1007.)

Prosecutorial access to officer personnel files for *Brady* purposes does not threaten the privacy interests protected by Section 832.7(a), where the officer witnesses are members of the prosecutorial team led by the prosecutor directing the review, and the review itself does not entail disclosure of information from the files outside the prosecution team. The legislative history shows clearly that the Legislature was concerned with public disclosure of information from officer personnel files. We are aware of nothing in the legislative history suggesting the Legislature intended to prevent prosecutors from inspecting officer personnel files for *Brady* purposes or to otherwise dictate the manner in which *Brady* materials in an officer's personnel files may be identified. (See Part IV.B., *ante*; Neri, *supra*, 43 McGeorge L. Rev. at pp. 304, 309.) The Legislature's interests in protecting officer privacy are fully preserved by our conclusion that the prosecution must bring a motion under Section 1043 to disclose *Brady* material in officer personnel files to the defendant.

DISPOSITION

The petitions for writ of mandate/prohibition are denied in part and granted in part. Let a peremptory writ of mandate issue, directing the San Francisco Superior Court to modify its January 7, 2014 "Order re *Brady* Motions" to provide that, if the San Francisco District Attorney identifies any evidence in the San Francisco Police Department personnel files for Officers Dominguez and Carrasco that should be disclosed to defendant Johnson under *Brady v. Maryland* (1963) 373 U.S. 83, the District Attorney shall file a motion under Evidence Code section 1043 to obtain such disclosure. In all other respects, the writ petitions are denied. The previously imposed stay of trial in defendant Johnson's criminal case shall dissolve upon issuance of the remittitur.

                                                _____

                                                Simons, Acting P.J.

We concur:

_____

Needham, J.

_____

Bruiniers, J.

A140767, A140768

Superior Court of the City and County of San Francisco, No. 12029482, Richard B. Ulmer, Jr., Judge.

George Gascón, San Francisco District Attorney, Jerry P. Coleman, Laura vanMunching, Allison G. Macbeth, Assistant District Attorney for Petitioner and Real Party In Interest the People.

Dennis J. Herrera, San Francisco City Attorney, Christine Van Aken for Petitioner City and County of San Francisco.

Nina D. Sariaslani, SFPD Legal Division Attorney, for Petitioner San Francisco Police Department.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Senior Assistant Attorney General, Laurence K. Sullivan, Supervising Deputy Attorney General, Seth K. Schalit, Supervising Deputy Attorney General, for California Attorney General as Amicus Curiae on behalf of Petitioner and Real Party In Interest the People.

Gregory D. Totten, District Attorney (Ventura County), Michael D. Schwartz, Special Assistant District Attorney as Amicus Curiae on behalf of Petitioner and Real Party In Interest the People.

Rains Lucia Stern, Michael L. Rains for Peace Officers' Research Association of California (PORAC), The PORAC Legal Defense Fund, and The San Francisco Police Officers' Association as Amicus Curiae on behalf of Petitioner and Real Party In Interest the People.

Nancy E. O'Malley, District Attorney (Alameda County), Jeff Rubin, Senior Deputy District Attorney for Appellate Committee of the California District Attorneys Association as Amicus Curiae on behalf of Petitioner and Real Party In Interest the People.

Jeffrey F. Rosen, District Attorney (Santa Clara), David A. Angel, Assistant District Attorney as Amicus Curiae for Petitioner and Real Party In Interest the People.

Sedgwick, Michael L. Fox for Respondent.

Jeff Adachi, Public Defender, Matt Gonzalez, Chief Attorney, Christopher Gauger, Deputy Public Defender for Real Party in Interest Daryl Lee Johnson.

A140767, A140768